TERRI F. LOVE, Judge.
11 Gary Greer (“Mr. Greer”) sustained injuries while in the course and scope of his employment at Whole Foods Company, Inc. (“Whole Foods”) when he grabbed a falling meat cart. Mr. Greer filed a workers’ compensation claim against Whole Foods when it failed to authorize Mr. Greer’s orthopedic surgery and sent him to another physician for a second medical opinion. Mr. Greer filed a motion to strike seeking to exclude the reports of Dr. Gordon Nutik’s (“Dr. Nutik”) second medical opinion and Dr. Ralph Katz’s (“Dr. Katz”) independent medical examination (“IME”). The workers’ compensation court granted the motion to strike. At trial, the workers’ compensation court found that there was no dispute as to Mr. Greer’s condition, and thus he was entitled to surgery, penalties, and attorney fees. Whole Foods appeals the judgment of the workers’ compensation court claiming that Mr. Greer is not entitled to surgery due to conflicting medical opinions and is not entitled to penalties and attorney fees. We find that the workers’ compensation court properly relied on the opinion of Dr. Alexis Waguespack (“Dr. Waguespack”) when finding surgery was necessary and related 12to the subject accident as she was the choice of physician of Mr. Greer and Whole Foods. Additionally, we find the award of penalties and attorney fees proper. Therefore, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In June 10, 2009, Mr. Greer sustained injuries to his neck and right shoulder during the course and scope of his employment with Whole Foods, when a meat cart he was pushing fell into a groove in the floor and began to fall. Mr. Greer grabbed the cart to stop it, and the cart struck his right side and cut his hand. Mr. Greer did not immediately seek medical treatment until July 2009, when he reported to Doctors After Hours clinic with complaints of neck pain. After learning of the accident, Whole Foods referred Mr. Greer to Dr. Paul Lansing (“Dr. Lansing”) at Concentra, who then referred Mr. Greer to Dr. Robert Steiner (“Dr. Steiner”), an orthopedic surgeon for further evaluation. Mr. Greer refused to see Dr. Steiner after having a bad experience with him during a prior, unrelated surgery. Consequently, Dr. Lansing referred Mr. Greer to Dr. Waguespack in September 2009. In December 2010, Mr. Greer signed an employee’s choice of physician form electing Dr. Waguespack as his choice of treating orthopedic surgeons.
Dr. Waguespack treated Mr. Greer and performed several tests between September 2009 and March 2012. During Mr. Greer’s treatment, Dr. Waguespack diagnosed Mr. Greer with “an instability pattern at C4-5 with anterolisthesis,” forami-nal stenosis, and disc bulge at C6-7 with radiculitis. She also noted Mr. |sGreer had degenerative disk disease. She testified that the accident aggravated some of Mr. Greer’s underlying pre-existing conditions. In support of her opinion, she compared the MRI films from 2004 and 2009 and found a significant difference in the post-injury cervical 2009 MRI study versus the previous MRI study in 2004. She also testified that the EMG studies were consistent with what she observed on the MRI films. Based on the studies, in December 2010, Dr. Waguespack requested authorization from Whole Foods to perform an anterior cervical fusion surgery on Mr. Greer.
In January 2011, Whole Foods sent Mr. Greer to Dr. Nutik for a second medical opinion. Despite not having the MRI films to review, Dr. Nutik disagreed with Dr. Waguespack’s recommendation for *84 surgery and suggested a conservative treatment method. Due to the conflicting medical reports, Whole Foods requested an IME pursuant to La. R.S. 23:1123. The IME was scheduled with Dr. Katz for April 2011, and Mr. Greer was notified in March 2011. Prior to when the scheduled IME was to take place, Mr. Greer filed a pro se disputed claim for compensation (Form 1008) contesting the “appropriateness of the [IME].” The workers’ compensation court never set the matter for hearing and no action was taken in regards to Mr. Greer’s Form 1008. Because Mr. Greer never heard from the Office of Workers’ Compensation (“OWC”), Mr. Greer attended the IME with Dr. Katz who also disagreed with Dr. Waguespack’s recommendation for surgery.
Mr. Greer filed with the OWC a supplemental and amended petition in June 2011, claiming the surgery recommended by Dr. Waguespack was not approved, |4the use of a second medical opinion was improper, the use of an IME was improper, and a request for penalties and attorney fees. Mr. Greer also filed a motion to strike seeking to exclude the reports of Dr. Nu-tik’s second medical opinion and Dr. Katz’s IME. The court granted the motion to strike finding that the exam by Dr. Nutik was inappropriate and could not be used to create a dispute as to Mr. Greer’s condition and/or the course of treatment. The court also found that because it failed to set a hearing following Mr. Greer’s filing of the disputed claim, Mr. Greer did not waive his right to object to the IME.
Following a trial on the merits, the workers’ compensation court found Dr. Waguespack is Mr. Greer’s and Whole Foods’ choice of physician and Dr. Wag-uespack’s deposition and report properly excluded references to Dr. Katz’s findings. The court also concluded that Mr. Greer’s surgery was necessary and related to the subject accident, ordering Whole Foods to authorize and pay for the same. Additionally, the court found Whole Foods incorrectly calculated Mr. Greer’s indemnity benefits. As a result, the court ordered Whole Foods to pay penalties and attorney fees, but noted that Whole Foods was entitled to a credit against indemnity benefits paid while Mr. Greer was working. Whole Foods files this timely appeal, seeking reversal of the trial court’s finding that (1) Dr. Waguespack is Whole Foods’ choice of physician; (2) the IME by Dr. Katz was not appropriate; (3) Dr. Waguespack’s deposition should be admitted with references to Dr. Katz redacted; (4) cervical surgery is necessary and related to the accident; and (5) Mr. Greer is entitled to an award of penalties and attorney fees.

|,,STANDARD OF REVIEW

The standard of review applied in a workers’ compensation case is the “manifest error-clearly wrong” standard. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 6 (La.7/1/97), 696 So.2d 551, 556. The findings of the workers’ compensation court will not be set aside by the appellate court unless they are found to be clearly wrong after reviewing the record in its entirety. Id. See also Irving v. Transit Mgmt. of Se. Louisiana, Inc., 10-0360, p. 2 (La.App. 4 Cir. 7/20/10), 44 So.3d 796, 798. In addition, the appellate court will not disturb the trial court’s findings of fact in the absence of manifest error, or unless it is clearly wrong. In Simmons v. Associated Hosp. Servs., Inc. 03-0768, p. 6 (La.App. 4 Cir. 12/3/03), 862 So.2d 1043, 1048, this Court explained:
[w]here there are two permissible views of evidence, a fact finder’s choice between them can never be manifestly erroneous or clearly wrong. Seal v. Gaylord Container Corp., 97-0688 (La.12/2/97), 704 So.2d 1161, 1164. Because determination of the existence of a *85 work-related injury is [a] question of fact involving credibility of witnesses, determination of the trial judge, who had opportunity to observe and hear the witnesses, is given great weight on review. State v. Richardson, 459 So.2d 81 (La.App. 1 Cir.1984).

LOUISIANA REVISED STATUTE 23:1121

Whole Foods claims that Dr. Wag-uespack is Mr. Greer’s choice of physician only, and therefore, it was appropriate for Whole Foods to seek a second medical opinion from Dr. Nutik. Pursuant to La. R.S. 23:1121(A), the employer is entitled to have an injured employee examined “by a duly qualified medical practitioner provided and paid for by the employer, as soon after the accident as demanded, and from time to time thereafter ... during the pendency of his claim ...” The employer “shall not require the employee to be examined by more than one duly qualified 16medical practitioner in any one field or specialty unless prior consent has been obtained from the employee.” La. R.S. 23:1121(A).
Whole Foods avers that pursuant to La. R.S. 23:1121 (B)(2)(a)[1], it did not “specifically direct” Mr. Greer to Dr. Wagues-pack, and as such, “Dr. Waguespack should only be considered [Mr. Greer’s] choice of orthopedic surgeons.” This argument, however, fails in light of the language of subsection (B)(3) which contemplates in what instances subsection (B)(2)(a) does not apply.
Under La. R.S. 23:1121(B)(3), any other physician to whom an employee is referred by an employee-selected physician is also deemed the employer’s choice. Upon learning of Mr. Greer’s accident and injury, Whole Foods, through its workers’ compensation adjuster, referred Mr. Greer to Dr. Lansing at Concentra for treatment. Dr. Lansing then referred Mr. Greer to Dr. Steiner, an orthopedic surgeon, for further evaluation; however, Mr. Greer refused to be examined by Dr. Steiner due to a bad experience during a prior, unrelated surgery. Dr. Lansing then referred Mr. Greer to Dr. Waguespack.
|7Whole Foods asserts that because Mr. Greer refused to see Dr. Steiner, Mr. Greer became directly involved in selecting his physician, and as a result Whole Foods did not “specifically direct” Mr. Greer to Dr. Waguespack as envisioned by La. R.S. 23:1121(B)(2)(a). Mr. Greer testified that when Concentra made the recommendation to treat with Dr. Waguespack, Mr. Greer did not have another orthopedist in mind, nor did he know Dr. Waguespack prior to Dr. Lansing’s referral. Mr. Greer “trusted in [Whole Foods]” and followed *86 their recommendation. The trial court found Mr. Greer’s refusal to treat with Dr. Steiner was reasonable, and therefore, not a factor in the determination of whether Dr. Waguespack is Whole Foods’ choice of physician.
When Dr. Lansing, Whole Foods’ selected physician, referred Mr. Greer to Dr. Waguespack for treatment, Dr. Wagues-pack became Whole Foods’ choice of physician. Accordingly, we find the trial court did not err in finding that Dr. Waguespack is the physician of choice for both Whole Foods and Mr. Greer.

SECOND MEDICAL OPINION

Whole Foods also asserts that even if Dr. Waguespack is considered its choice of physician, Whole Foods is still entitled to a second medical opinion pursuant to the Louisiana Administrative Code, tit. 40, pt. 1, § 2711(A) which provides:
When surgery has been recommended by the treating physician, the Carrier/Self-Insured Employer is entitled to obtain a second professional opinion from a physician chosen by the Carrier/Self-Insured Employer. Regardless of the second surgical opinion outcome, the claimant remains free to elect not to undergo surgery after the consultation. The Carrier/Self-Insured Employer is responsible for informing the claimant when a second surgical opinion is required and for referring the claimant to a second surgical opinion physician. This program is designed to reduce unnecessary surgeries and to provide the claimant with possible alternate courses of treatment so that he or she can make an informed decision.
| ^Despite Section 2711 of the Hearing Rules giving an employer a right to obtain a second medical opinion when the treating physician recommends surgery, Section 2711 must be interpreted in light of La. R.S. § 23:1121. To do otherwise, would authorize the very conduct the legislation intends to prevent.
Section 2711 permits the employer to select its own physician when surgery is recommended. In this case, however, Whole Foods already selected its choice physician, when it referred Mr. Greer to Dr. Waguespack. The principles guiding the legislature’s enactment of La. R.S. 23:1121 cannot be ignored. As previously discussed, Whole Foods is bound by its choice of physician under La. R.S. 23:1121(B)(3). Simply because now Whole Foods does not agree with its selected physician’s recommendation, does not entitle it to choose a new physician within the same field in an attempt to find a prognosis more acceptable to Whole Foods. See Iberia Parish Sch. Bd. v. Broussard, 03-0151, p. 5 (La.App. 3 Cir. 9/10/03), 854 So.2d 464, 467 (employer could not seek a second opinion by a second neurosurgeon of its choice merely because it did not like the diagnosis of the first neurosurgeon it chose, despite claimant accepting employer’s choice of neurosurgeon and adopting employer’s chosen physician as her own).
Whole Foods directed Mr. Greer to two orthopedists, Dr. Waguespack and Dr. Nu-tik. When Dr. Waguespack, Whole Foods’ choice of physician, recommended surgery, Whole Foods sent Mr. Greer to a second orthopedist for another opinion. Whole Foods’ actions amount to “doctor shopping” and precisely what La. R.S. 23:1121(A) intends to prohibit. Whole Foods cannot choose a | ^doctor in the same specialty for the purpose of finding a more favorable recommendation for Whole Foods when they disagree with their initial physician’s recommendation.
Further, the purpose of Section 2711 is to provide “the claimant with possible alternates courses of treatment so that he or *87 she can make an informed decision.” La. Admin. Code, tit. 40, pt. 1, § 2711(A). There is no indication that Mr. Greer has failed to explore his options or that Dr. Waguespack has not provided the necessary information for Mr. Greer to make an informed decision. Mr. Greer testified that while under the treatment of Dr. Lansing and since his referral to Dr. Wagues-pack, he has “done everything ... the conservative way” and his condition has not improved. Likewise, he stated he understood that surgery, as Dr. Waguespack recommended, is his next option since conservative treatment proved unsuccessful.
The trial court found that Mr. Greer was “an unrepresented injured worker when the employer sent him from doctor to doctor,” and the employer was not entitled under La. R.S. 23:1121 to send Mr. Greer to Dr. Nutik when it did not like its own choice of orthopedist’s treatment recommendation.
In addition, Mr. Greer avers that the second medical opinion was untimely. The Louisiana Supreme Court has recognized that a “failure to authorize treatment is effectively a failure to provide treatment.” Authement v. Shappert Eng’g, 02-1681, p. 8 (La.2/25/03), 840 So.2d 1181,1187. Thus, La. R.S. 23:1201(E)’s requirement that payment of medical benefits shall be paid within sixty days is | ^interpreted to also apply to the authorization of medical benefits. Id., 02-1631, p. 11, 840 So.2d at 1188.
Dr. Waguespack first indicated that Mr. Greer may be a surgery candidate as early as May 2010, which Whole Foods was informed of in July 2010. Dr. Waguespack reiterated her medical opinion in July 2010, which Whole Foods received in August 2010. In September 2010, Dr. Wag-uespack recommended surgery at the C3-4 and C4-5 levels, and possibly at the C6-7 level. Whole Foods received Dr. Wagues-pack’s September 2010 recommendation in October 2010. Thereafter on December 13, 2010, Dr. Waguespack requested authorization from Whole Foods to perform an anterior cervical surgery on Mr. Greer. After receiving the request, Whole Foods did not schedule the second medical opinion until December 20, 2010. Mr. Greer was not evaluated until January 2011. Whole Foods was notified on numerous occasions from May 2010 through September 2010 that Mr. Greer was recommended for surgery and Mr. Greer was not scheduled for a second medical opinion until January 2011; thus, Dr. Nutik’s second medical opinion to controvert Dr. Wagues-pack’s recommendation was untimely pursuant to La. R.S. 23:1201(E).
Moreover, the trial court determined that Dr. Nutik’s medical report was incomplete, and consequently, failed to create a real dispute as it related to Mr. Greer’s medical treatment as is necessary for an independent medical examination. La. R.S. 1123 states.
If any dispute arises as to the condition of the employee, or the employee’s capacity to work, the director, upon application of any |nparty, shall order an examination of the employee to be made by a medical practitioner selected and appointed by the director. The medical examiner shall report his conclusions from the examination to the director and to the parties and such report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under this Chapter.
Dr. Waguespack recommended Mr. Greer undergo an anterior cervical fusion at three levels and possibly a fourth. Conversely, Dr. Nutik did not recommend surgical intervention and instead recommended conservative treatment. Whole Foods claims that because a dispute arose regarding the appropriate treatment for Mr. Greer an IME was necessary.
*88 The trial court found that because Dr. Nutik’s opinion was the result of an inappropriate exam, his opinion cannot be used to create a dispute as to Mr. Greer’s condition and/or treatment. Thus, the OWC did not have authority to order an IME.
Furthermore, Dr. Nutik’s medical report was incomplete. The trial court gave less weight to Dr. Nutik’s opinion than Dr. Waguespack. The trial court noted that unlike Dr. Waguespack, Dr. Nutik did not review the MRI films. Instead, he relied on the radiologists’ reports in making his determinations, but admitted that having the films would be relevant. Because Dr. Nutik based his opinion on incomplete observations, the trial court found that there could be no real dispute as to Mr. Greer’s condition and the necessity of surgery. Thus, for the foregoing reasons we find the trial court did not err in concluding that the examination by Dr. Nutik was inappropriate, and that his opinion could not be used to create a dispute as to Mr. Greer’s condition and/or treatment.
| ^INDEPENDENT MEDICAL EXAMINATION
In addition to the reasons discussed above, the IME was unwarranted because Mr. Greer timely objected to the appointment of an IME. In March 2011, Mr. Greer was notified by the OWC that he was scheduled for an IME at Whole Foods’ request with Dr. Katz. On April 1, 2011, Mr. Greer filed pro se, a disputed claim for compensation (Form 1008), objecting to the Whole Foods’ right to such an examination. However, due to the trial court’s inaction and the lack of response, Mr. Greer subsequently attended the IME. While Whole Foods suggests that Mr. Greer’s attendance effectively waived his right to object to the IME, the trial court reasoned, “Mr. Greer was trying to navigate the workers’ compensation system without the benefit of an attorney” and was simply “cooperating” during the process. The trial court’s inaction following Mr. Greer’s timely filed objection should not bar his rights. Thus, under the circumstances presented in this case, the workers’ compensation court properly granted Mr. Greer’s motion to strike as it relates to the findings of Dr. Nutik and Dr. Katz.

NECESSITY OF SURGERY AND CAUSATION

Whole Foods asserts that the trial court erred in finding Mr. Greer is entitled to surgery. “An [injured] employee in a worker’s compensation case has the burden of establishing a causal link between the accident and the subsequent disabling condition.” Peveto v. WHC Contractors, 93-1402, 630 So.2d 689, 691 (La.1/14/94). In Merrill v. Greyhound Lines, Inc., 10-0834, p. 6-7 (La.App. 4 Cir. 6/29/11), 70 So.3d 991, 995 this Court stated:
Even if the claimant suffered from a pre-existing medical condition, he may still meet his burden of proof of causation if he proves that the accident aggravated, accelerated, or combined with the pre-existing condition to produce an injury resulting in a compensable disability. Peveto v. WHC Contractors, 93-1402 (La.1/14/94), 630 So.2d 689, 691. The claimant may be aided in meeting the foregoing burden by a presumption of causation, if he can prove that before the accident he had not manifested disabling symptoms, that such symptoms commenced with the accident and manifested themselves thereafter, and that either medical or circumstantial evidence indicates a reasonable possibility of causal connection between the accident and the onset of the disabling symptoms. Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320, 324-25 (La.1985). Once the claim *89 ant has established the presumption of causation, the opposing party bears the burden of producing evidence and persuading the trier of fact that it is more probable than not that the work injury did not accelerate, aggravate or combine with the pre-existing condition to produce the employee’s disability. Peveto, 93-1402 at pp. 2-3,. 630 So.2d at 691.
Additionally, “the testimony of a treating physician is accorded greater weight than that of a physician who examines a patient only once or twice.” Williams v. Wal-Mart Stores, 00-0863, p. 6 (La.App. 4 Cir. 5/16/01), 787 So.2d 1134, 1147. However, the treating physician’s testimony is not irrebuttable, and the trier of fact is required to weigh the testimony of all medical witnesses. Id.
The trial court in weighing the testimony of the medical witnesses, noted that Dr. Waguespack examined Mr. Greer on numerous occasions between September 2009 and March 2013 versus Dr. Nutik’s one time examination. Dr. Waguespack is a “fellowship trained spine surgeon” and performs cervical spine surgery, and Dr. Nutik does not. Additionally, Dr. Nutik did not review the MRI films Dr. Waguespack relied on in making her surgical recommendation. Likewise, the trial court considered Dr. Wag-uespack’s testimony in light of Mr. Greer’s testimony of complaints of pain and that, although he did not want to undergo surgery, he believed it was needed to reduce his pain and improve his function.
1MWhole Foods avers that Mr. Greer has failed to prove causation. Whole Foods contends that Mr. Greer had pre-existing conditions that were not causally related to his accident at work. While Mr. Greer admits that there is evidence of pre-exist-ing conditions, including radiculitis, instability pattern, and degenerative disk disease, the conditions were aggravated as a result of the accident. Dr. Waguespack’s findings support Mr. Greer’s contention and note the difference in MRI film taken post-injury in 2009 and the MRI film taken pre-injury in 2004. It revealed a newly formed anterolisthesis and foraminal sten-osis with a disk bulge at C6-7. Further, Dr. Nutik, although he did not recommend surgery, noted that Mr. Greer suffered a soft tissue strain that was superimposed on underlying degenerative changes. Both diagnoses suggest either aggravation of a medical condition or a combination with a preexisting medical condition to produce the disability. Accordingly, it was reasonable for the trial court to conclude that Mr. Greer’s injuries were causally related to the accident. Considering the medical evidence and testimony, the trial court did not err in finding that the surgery was necessary and causally related to the subject accident.

INDEMNITY

Whole Foods also asserts that Section 6007 of the workers’ compensation hearing rules provides that a pre-trial statement in a workers’ compensation case must include stipulations agreed to by all parties and all issues to be litigated. Whole Foods suggests that while Mr. Greer filed a pre-trial statement, he did not include the issue of calculation of average weekly wage, and thus the issue was not properly before the court.
11fiLa. R.S. 23:1317(A) provides that “[t]he workers’ compensation judge shall not be bound by technical rules of evidence or procedure other than as herein provided” and that the workers’ compensation judge “shall decide the merits of the controversy as equitably, summarily, and simply as may be.” Further, Louisiana jurisprudence is replete with instances wherein the workers’ compensation court consid *90 ered the calculation of the average weekly-wage in the determination of whether the claimant was entitled to indemnity benefits. See Hargrave v. State ex rel. Dep’t of Transp. & Dev., 10-1044, p. 10-11 (La.1/19/11), 54 So.3d 1102, 1108; Ravy v. Bridge Terminal Transport, 04-0134, p. 10 (La.App. 4 Cir. 9/29/04), 883 So.2d 1139, 1146; see also Taylor v. J.C. Penney, 06-1520, p. 9 (La.App. 4 Cir. 5/23/07), 959 So.2d 549, 554-55.
In his pre-trial statement, Mr. Greer alleged “Entitlement to Indemnity Benefits” as an issue in dispute. Whole Foods also filed an amended pre-trial statement that alleged, “[w]hether the claimant is entitled to any indemnity benefits” as an issue in dispute. Whole Foods has failed to point to any law to support its contention that Mr. Greer must specifically plead “the calculation of average weekly wage” as an issue to be litigated, when both parties have stipulated to the issue of indemnity benefits. In relation to the issue of indemnity benefits, both parties submitted the same wage records, evidencing Mr. Greer’s true average weekly wage. Likewise, Whole Foods also introduced the checks it made payable to Mr. Greer in indemnity benefits.
Thus, the trial court acted reasonably and within its discretion when it ruled that indemnity benefits included indemnity benefits at the correct rate and was properly before the court. There was no prejudice to Whole Foods in raising this issue at trial because Whole Foods was aware the issue existed and was prepared to 11Baddress the issue at trial. Accordingly, we find the trial court did not err in finding the issue was properly before the court.

PENALTIES AND ATTORNEY FEES

“The determination of whether an employer or insurer should be cast with penalties and attorney fees in a workers’ compensation action is essentially a question of fact. Factual findings are subject to the manifest error or clearly wrong standard of review.” Authement v. Shappert Eng’g, 02-1631, p. 12 (La.2/25/03), 840 So.2d 1181, 1188-89. Pursuant to La. R.S. 23:1201, penalties and attorney fees for failure to timely pay benefits shall be assessed, unless the claim is reasonably controverted or such nonpayment results from conditions over which the employer or insurer had no control. Brown v. Texas-LA Cartage, Inc., 98-1063, p. 5 (La.12/1/98), 721 So.2d 885, 887-88. See also La. R.S. 23:1201(F).
The parties stipulated that Mr. Greer’s average weekly wage was $718.55, resulting in a compensation of $479.03. Whole Foods presented evidence that Mr. Greer was paid benefits at a rate of $472.88 per week. Mr. Greer was underpaid weekly in the amount of $6.16. Because the indemnity benefits were not paid in full due to Whole Foods’ admitted miscalculation, the penalty was warranted pursuant to La. R.S. 23:1201(F).
Additionally, La. R.S. 23:1201(E) requires an employer to pay within sixty days from the receipt of a claim for workers’ compensation medical benefits to tender payment for the same. Here, Whole Foods received Mr. Greer’s demand for payment of medical expenses from Doctors After Hours in May 2011. Whole Foods was in receipt of the claim as it requested certified copies of the medical records and bill from Doctors After Hours in July 2011. While Whole Foods had the claim in July 2011, Whole Foods did not pay the claim until May 2012, and |17was unable to explain why it was unable to pay the claim within the sixty days required by law.
As previously discussed, the trial court properly found that Dr. Waguespack is the *91 choice of physician for both Mr. Greer and Whole Foods; and thus, Whole Foods was not entitled to a second medical opinion. La. R.S. 23:1201(E), requiring payment of medical benefits within sixty days, has been previously interpreted to apply to the authorization of medical benefits as well. Therefore, the second medical examination was inappropriate as it was obtained more than sixty days from when Whole Foods was notified that Mr. Greer was a surgical candidate.
The trial court found that Dr. Wagues-pack recommended Mr. Greer for surgery in May 2010, and notification was sent to the insurance company. Evén with knowledge that Whole Foods’ choice of physician was recommending surgery, the Whole Foods did not authorize the request. Instead, it waited for almost seven months from Dr. Waguespack’s recommendation for surgery, and then pursued a second opinion from a doctor of its choosing in December 2010. The appointment with Dr. Nutik was not scheduled to occur for another two and a half weeks after contacting Dr. Nutik’s office. During this time, Mr. Greer’s symptoms worsened, and he continued to take medication he did not want to manage the day to day pain. Because the sixty day period was exceeded, Mr. Greer is entitled to penalties for Whole Foods’ failure to authorize surgery as determined by the trial court.
Finally, Mr. Greer is entitled to attorney fees. An award of attorney fees is within the trial court’s discretion and will not be disturbed by this Court absent manifest error. Discover Bank v. Rusher, 10-0850, p. 3 (La.App. 4 Cir. 12/8/10), |1853 So.3d 651, 653; Troth Corp. v. Deutsch, Kerrigan & Stiles, 06-0457, p. 3 (La.App. 4 Cir. 1/24/07), 951 So.2d 1162, 1165.
Whole Foods asserts that Mr. Greer is not entitled to attorney fees largely due to the improper penalty award. In awarding attorney fees, the trial court reasoned, that Whole Foods’ failure to authorize a surgery its choice of physician recommended for seven months while Mr. Greer attempted to manage his pain and sending him to a second physician for another opinion more suitable to Whole Foods “is exactly the type of behavior and indifference that penalties and attorney’s fees were designed to discourage.” Given the trial court’s vast discretion to determine whether to award attorney fees and the trial court’s written reasons in this case, we do not find the trial court abused its discretion. Accordingly, we find the trial court did not err in awarding attorney fees.

DECREE

For the foregoing reasons, the judgment of the workers’ compensation court is affirmed.
AFFIRMED.

. La. R.S. 23:1121(B) provides in pertinent part:
B. (1) The employee shall have the right to select one treating physician in any field or specialty ...
(2)(a) If the employee is treated by any physician to whom he is not specifically directed by the employer or insurer, that physician shall be regarded as his choice of treating physician.
(b) When the employee is specifically directed to a physician by the employer or insurer, that physician may also be deemed as the employee’s choice of physician, if the employee has received written notice of his right to select one treating physician in any field or specialty, and then chooses to select the employer’s referral as his treating specialist after the initial medical examination as signified by his signature on a choice of physician form ...
(3) Paragraph (2) of this Subsection shall not apply to other physicians to whom the employee is referred by the physician selected by the employer unless the employer or insurer has obtained the choice of physician form provided for under Subpara-graph (2)(b) separately for any such physician after the initial medical examination with that physician.