STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-759 Consolidated with 17-357

TERRELL TALBOT

VERSUS

MOUTON PLUMBING AND HAULING, INC. AND
LIBERTY MUTUAL INS. CO.

************

APPEAL FROM
OFFICE OF WORKERS' COMPENSATION DISTRICT 4,
PARISH OF LAFAYETTE, NO. 12-3665
SHARON MORROW, WORKERS' COMPENSATION JUDGE

************
SYLVIA R. COOKS
JUDGE
************

Court composed of Sylvia R. Cooks, Elizabeth A. Pickett, and Phyllis M. Keaty, Judges.

AFFIRMED IN PART, AMENDED IN PART, REVERSED IN PART,

REMANDED. WRIT DENIED.

Carl Rachal
103 Timberland Ridge Blvd.
Lafayette, LA  70507
(337) 989-2278
COUNSEL FOR PLAINTIFF/APPELLEE:
 Terrell Talbot

Patrick A. Johnson
Corey M. Meaux
Allen & Gooch, A Law Corporation

**P.O. Box 81129**
**Lafayette, LA  70598-1129**
**(337) 291-1430**
COUNSEL FOR DEFENDANTS/APPELLANTS:
  Mouton Plumbing and Hauling, Inc. and
  Liberty Mutual Ins. Co.

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

Mouton Plumbing and Hauling, Inc. (Mouton Plumbing) and Liberty Mutual Insurance Company (Liberty Mutual) sought supervisory writs from the judgment of the Office of Workers' Compensation. This court rendered judgment on June 1, 2017, ordering the consolidation of that matter, Docket Number 17-357, with this appeal.

Plaintiff, Terrell Talbot (Talbot) was involved in an automobile accident while acting within the course and scope of his employment with Mouton Plumbing. Mouton Plumbing and Liberty Mutual, its workers' compensation insurer, accepted Talbot's claim as compensable under La. R.S. 23:1021, et seq. Talbot was paid workers' compensation indemnity benefits in the amount of $23,487.86 and medical expenses of $45,777.16, for a total of $69,265.02.[1] Talbot also filed a civil lawsuit against a third-party tortfeasor and her insurer, Farm Bureau. In accordance with the provisions of La.R.S. 23:1102(A) he notified his employer and its insurer in writing that he filed suit and provided the name of the court in which the suit was filed. The employer and its insurer intervened in the suit.

Talbot settled his tort claim for $107,389.73 without procuring Mouton Plumbing or Liberty Mutual's written approval. Liberty Mutual thereafter terminated Talbot's workers' compensation benefits. Under the provisions of La.R.S. 23:1102(B), if an employee fails to obtain the employer or workers' compensation insurer's approval for a compromise and settlement of his tort claim he forfeits his right to workers' compensation benefits. An employee, may,

---

[1] The appellant in brief refers to this figure as $69,265.01.

however, reclaim his right to workers' compensation benefits through a "buy-back" provision provided in La.R.S. 23:1102(B). At the time Talbot's benefits were terminated a lien filed by Liberty Mutual had not been satisfied. After deducting attorney fees in the amount of $42,955.89, and costs calculated by Talbot's attorney totaling $35,703.00, the balance due Talbot on the settlement, $28,730.84, was paid directly to Liberty Mutual in satisfaction of its lien. Talbot asserts this payment satisfied the buy-back provision of La.R.S. 23:1102(B). Mouton and Liberty Mutual assert the $28,730.84 payment is not sufficient to fully "buy-back" Talbot's benefits, and thus his claim for workers' compensation benefits remains forfeited until a sufficient amount is paid to Mouton/Liberty Mutual.

Talbot, Mouton and Liberty Mutual all filed cross motions for summary judgment. Mouton and Liberty Mutual filed an opposition to Talbot's motion for summary judgment but Talbot did not file an opposition to their motion. The workers' compensation judge (WCJ) granted Talbot's motion for summary judgment. The WCJ fixed the buy-back amount at $26,822.59 and held that Talbot's payment of $28,730.84 restored his benefits. The WCJ also rendered judgment in favor of Mouton and Liberty Mutual decreeing they are entitled to an additional dollar for dollar credit against Talbot's future benefits in the amount of $28,730.83 and finding that such sum had not yet been satisfied. The trial court also found Talbot overpaid the "buy-back" in the amount of $1,908.24, plus accrued interest, and ruled the overpayment was either to be reimbursed to Talbot or applied against the dollar for dollar credit in favor of Mouton and Liberty Mutual, at Talbot's option. Costs in the trial court were assessed equally between the parties.

2

Mouton and Liberty Mutual appeal the WCJ's rulings asserting the WCJ misapplied and misinterpreted La.R.S. 23:1102(B). They assert two assignments of error in the trial court ruling:

(1) The Trial Court committed legal error in its method of calculation of the "buy back" amount under LSA-R.S. 23:1102(B).

(2) The Trial Court committed manifest error in finding that TALBOT has satisfied the necessary "buy back" amount under LSA-R.S. 23:1102(B).

Talbot appeals the trial court's judgment asserting one assignment of error:

The trial court committed reversible error and abused its discretion by ruling that the plaintiff had not completely satisfied the "buy-back" provision of LSA-R.S. 23:1102(B) and that defendants were entitled to an additional credit against future workers' compensation benefits in the sum of $28,730.83.

## LEGAL ANALYSIS

Talbot acknowledges that his third-party lawsuit was settled and compromised without the written approval of Mouton or Liberty Mutual, therefore, this case is governed by the provisions of La.R.S. 23:1102(B). *Mercer v. Nabors Drilling USA, L.P.*, 11-2638 (La. 7/2/12), 93 So.3d 1265. Louisiana Revised Statutes 23:1102(B) provides:

If the employee or his dependent fails to notify the employer or insurer of the suit against the third person or fails to obtain written approval of the compromise from the employer and insurer at the time of or prior to such compromise, the employee or his dependent shall forfeit the right to future compensation, including medical expenses. Notwithstanding the failure of the employer to approve such compromise, the employee's or dependent's right to future compensation in excess of the amount recovered from the compromise shall be reserved upon payment to the employer or insurer of the total amount of compensation benefits, and medical benefits, previously paid to or on behalf of the employee, exclusive of attorney fees arising out of the compromise; except in no event shall the amount paid to the employer or insurer exceed fifty percent of the total amount recovered from the compromise. Such reservation shall only apply after the employer or insurer receives a dollar for dollar

3

credit against the full amount paid in compromise, less attorney fees and costs paid by the employee in prosecution of the third party claim.

We review motions for summary judgment de novo. Additionally, in this case the issues presented by both parties question the interpretation and application of statutory provisions. "Appellate courts review a trial court's conclusion regarding a question of law to determine whether the conclusion is legally correct. . . If the conclusions are found to be incorrect, the flawed legal conclusions must be reviewed de novo." *Latiolais v. Bellsouth Telecom., Inc.*, 11-383 p. 4 (La.App. 3 Cir. 10/5/11), 74 So.3d 872. 875 (citations omitted).

"The standard of review applied in a workers' compensation case is the 'manifest error-clearly wrong' standard."[5] *Greer v. Whole Foods Mkt., Inc.*, 13–0455, p. 5 (La.App. 4 Cir. 1/15/14), 133 So.3d 80, 84; *quoting Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96–2840, p. 6 (La. 7/1/97), 696 So.2d 551, 556. "The findings of the workers' compensation court will not be set aside by the appellate court unless they are found to be clearly wrong after reviewing the record in its entirety." *Greer*, 13–0455, p. 5, 133 So.3d at 84. "In applying the manifest error standard, the appellate court must determine not whether the fact finder was right or wrong, but whether the fact finder's conclusion was a reasonable one." *Hahn v. X–Cel Air Conditioning, Inc.*, 12–0236, p. 4 (La.App. 4 Cir. 1/9/13), 108 So.3d 262, 266. "If the factfinder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Baker v. Harrah's*, 15–0229, p. 6 (La.App. 4 Cir. 3/9/16), 190 So.3d 379, 386. "Application of the manifest error standard of review does not however, mandate the affirmance of a lower court decision with respect to findings of fact." *Alexander*, 630 So.2d at 710. "Where an appellate court finds manifest error, the factual findings of the trier of fact may be reversed." *Id*.

"When legal error interdicts the fact-finding process in a workers' compensation proceeding, the *de novo*, rather than the manifest error, standard of review applies." *Baker*, 15–0229, pp. 6–7, 190 So.3d at 386. "Likewise, interpretation of statutes pertaining to workers' compensation is a question of law and warrants a *de novo* review to determine if the ruling was legally correct." *Tulane Univ. Hosp. & Clinic v. Lockheed Martin Corp.*, 11–0179, p. 3 (La.App. 4 Cir. 6/29/11), 70 So.3d 988, 990.

4

*Tolley v. James Constr. Grp., LLC*, 15-1323, pp. 6-7 (La.App. 4 Cir. 9/28/16), 202 So.3d 1044, 1049–50.

Talbot maintains he bought back his right to continue receiving workers' compensation benefits in accordance with the provisions of La.R.S. 23:1102(B). The WCJ agreed with Talbot fixing the buy-back amount at $26,822.59. In its reasons for judgment the trial court explained its reliance on the Louisiana Supreme Court's decision in *City of Dequincy v. Henry*, 10-70 (La. 3/15/11), 62 So.3d 43, to reach its decision and in making its calculations. The trial court explained it arrived at the calculation of the "buy-back" amount by subtracting the attorney's fee of $42,442.42[2] from the total amount of benefits paid by Mouton/Liberty Mutual of $69,265.01.[3] This computation equaled $26,822.59. The attorney's fee was based on Talbot's contract with his attorney, J. Clemille Simon, APLC, which provided for a forty percent contingency fee to be charged after suit was filed regardless of whether the suit settled or went to trial. The trial court correctly noted that La.R.S. 23:1102(B) expressly provides the attorney fee is to be deducted from the *lien amount* (indemnity benefits of $23,487.86 and medical expenses of $45,777.16, for a total of $69,265.02 benefits paid) not from the total settlement amount. It further noted that "unlike 23:1103(C)(1) and (2), this provision places no limitation on the attorneys (sic) fee, simply providing 'attorney fees arising out of the compromise.'" We agree with the trial court's reasoning on these issues. However, the trial court used the wrong figure for attorney fees when making this calculation as the record shows the correct fee was $42,955.89 (forty percent of $107,389.73). (We note the trial court used the

---

[2]     The record shows this figure is incorrect. The correct fee is $42,955.89.

[3]     This figure is incorrect. The correct figure is $69,265.02.

5

correct attorney fee amount elsewhere in its calculations.) We therefore correct this calculation as follows: $69,265.02 - $42,955.89 = $26,309.13, the correct buy-back amount that Talbot needed to pay to reserve his right to future compensation benefits. This figure affects the calculation of the amount Talbot overpaid which now equals $2,421.71. We therefore adjust the award made by the trial court to reflect that Talbot is entitled to a credit of $2,421.71, and we otherwise affirm the trial court's award providing the addition of accrued interest on this figure, and providing that such overpayment is either to be reimbursed to Talbot or applied against the dollar for dollar credit in favor of Mouton and Liberty Mutual, at Talbot's option.

The trial court also pointed out that the statutory cap of fifty percent of the total amount of Talbot's recovery from the compromise does not apply because the "buy-back" amount here is less than the cap. In paragraph four of its reasons for judgment the WCJ listed the total settlement figure as $107,398.31[4] and calculated that fifty per cent of that figure equals $53,699.15. The settlement statement lists the gross amount paid by Farm Bureau as $107,389.73. The statute directs that "in no event shall the amount [for the buy-back] paid to the employer or insurer exceed fifty percent of the *total amount recovered* from the compromise." (Emphasis added). We find the trial court erred in making its calculation. The fifty percent ceiling provided in the statute is not based on the *gross amount* of the settlement but upon "the total amount recovered" in the compromise, thus the trial court should have calculated the maximum amount of the buy-back by subtracting the amount of Talbot's attorney fees expended to obtain the settlement from the

---

[4] The correct figure is $107,389.73.

6

gross amount of the settlement. In *Tolley,* 202 So.3d at 1051–52 (emphasis added), the appellate court addressed a similar situation:

> The parties stipulated that Mr. Tolley entered into an unauthorized settlement with a third party on November 13, 2013. The settlement amount was $15,000.00, including $5,625.00 for attorneys' fees and $743.72 for costs. La. R.S. 23:1102(B) provides that if an employee fails to receive approval from his employer prior to the settlement with a third party, then: the employee or his dependent shall forfeit the right to future compensation, including medical expenses. Notwithstanding the failure of the employer to approve such compromise, the employee's or dependent's right to future compensation in excess of the amount recovered from the compromise shall be reserved upon payment to the employer or insurer of the total amount of compensation benefits, and medical benefits, previously paid to or on behalf of the employee, exclusive of attorney fees arising out of the compromise; except in no event shall the amount paid to the employer or insurer exceed fifty percent of the total amount recovered from the compromise. Such reservation shall only apply after the employer or insurer receives a dollar for dollar credit against the full amount paid in compromise, less attorney fees and costs paid by the employee in prosecution of the third party claim.
>
> The Louisiana Supreme Court interpreted this provision to mean that the employer is entitled to a "dollar-for-dollar" credit for future medical expenses *equal to the total amount of the settlement minus attorneys' fees. Mercer v. Nabors Drilling USA, L.P.*, 11–2638, p. 4 (La. 7/2/12), 93 So.3d 1265, 1267. The Court found that the credit should not be capped in accordance with the statutory provision limiting the "buy back" amount to no more than fifty percent of the total amount of the settlement.
>
> Given the Louisiana Supreme Court's pronouncement in *Mercer*, we do not find that the trial court erred by finding that JCG was due a credit of $8,631.28, *the full amount of the settlement minus attorneys' fees.* Therefore, we affirm.

The proper calculation is thus: $107,389.73 (the correct settlement figure) minus $42,955.89 (attorney fees) which equals $64,433.84. One half of $64,433.84 equals $32,216.92, which is the maximum amount Talbot would be required to pay his employer or its insurer to fulfill the buy-back provision. Because this figure is greater than the amount of Talbot's actual buy-back figure which we have calculated as $26,309.13, this calculation does not change the trial

7

court's finding that Talbot's buy-back payment would not exceed the fifty percent statutory ceiling. It does, however, as we have noted, change the amount overpaid by Talbot.

The WCJ also concluded that in addition to the amount Talbot paid to "buy-back" his rights to future benefits, Mouton and Liberty Mutual are entitled to a dollar for dollar credit of $28,730.83. The WCJ explained that Talbot's benefits will "only 'kick in' after the employer/insurer 'receives a dollar for dollar credit against the full amount of the settlement, minus attorney fees and costs paid by the employee in prosecution of the third-party claim.'" In paragraph five the WCJ listed the total settlement amount as $107,389.72 from which it subtracted $42,955.89 in attorney fees, and $35,703.00 in costs, to arrive at the amount of Liberty Mutual's credit which it calculated to be $28,730.83. The trial court also reasoned that the "buy-back" sum is quasi-penal in nature and it is "not credited against the credit granted in the final sentence of 23:1102(B)." We agree with the latter finding which is fully supported by this court's decision in *Darbonne v. M&M Right of Way Contractors*., 693 So.2d 299 (La.App. 3 Cir. 04/30/97), and the Supreme Court's decisions in *Mercer* and *Dequincy*, as well as the plain language of the statute.

Talbot argued in the trial court, and again maintains on appeal, that the amount of the dollar for dollar credit he owes his employer should be calculated by subtracting his "attorney's fees, expenses and medical expenses" from the "total [settlement] amount actually received by the plaintiff in his tort settlement" and then dividing that sum by fifty percent. The Louisiana supreme court in *Mercer* expressly rejected that argument holding that language in the statute ("except in no event shall the amount paid to the employer or insurer exceed fifty percent of the

8

total amount recovered from the compromise") "is clearly inapplicable . . . as this language deals with the amount the employee must  pay back to the employer to reserve his right to recover future compensation." *Mercer*, 93 So.3d at 1267.

Talbot additionally maintains that the "buy-back" amount in his case should be calculated by subtracting the total amount of "attorney fees and costs, *including medical expenses [not paid by the employer but paid by his attorney]*" from the total compromise payment.  Talbot calculates this figure is $78,658.89, which when subtracted from $107,389.73 equals $28,730.84 which he argues is the "total amount subject to the 'buy-back.'"  He then applies the fifty per cent ceiling on this amount resulting in a "buy back" amount of $14,365.42.  As we have already stated this notion is not supported by the language of the statute or by the jurisprudence.  Alternatively, he argues that if only attorney's fees are to be subtracted from the total settlement then his "buy-back" amount would be fifty percent of that sum which equates to $32,216.92.  In such case, Plaintiff maintains "this court should look at the total amount of benefits that the plaintiff would have been entitled to since his termination date of September 11, 2011, and apply that amount against what was not paid in the tort settlement."  As a result, Talbot asserts he would still receive a credit because "the amount of the owed benefit would clearly exceed the amount of $3,486.08" (the difference between $32,216.92 and $28,730.84).  For the reasons we have already stated we reject these arguments.

In their written brief to this court, *Mouton and Liberty Mutual have expressly abandoned their argument regarding the calculation of Talbot's "buy-back" raised in the trial court and in their writ application* filed with this court and consolidated with this appeal. They candidly attempt to advance in this appeal a

new argument[5] which was not raised in the trial court, to support their assertion that Talbot has not paid an amount sufficient to "buy-back" his workers' compensation benefits. Because this argument was not raised in the trial court we will not consider it on appeal.

> The scope of review in all cases within the appellate and supervisory jurisdiction of the Courts of Appeal shall be as provided by LSA-Const. Art. 5, § 10(B), and as otherwise provided by law. The Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise.

Uniform Rules—Courts of Appeal, Rule 1-3. *See also*, *Thomas v. Bridges*, 13-1855 (La. 5/7/14), 144 So.3d 1001.

We turn now to address Talbot's assertion that the trial court erred in failing to include in its calculation of the dollar for dollar credit the amount of medical bills paid by Talbot's attorney that he asserts should have been paid by his employer but were not. The trial court did not include this figure in its calculation of the employer's dollar for dollar credit and did not address this issue when it ruled on the cross motions for summary judgment. Because this issue presents a dispute concerning a genuine issue of material fact the trial court could not render summary judgment in favor of Mouton/Liberty Mutual awarding Mouton/Liberty Mutual a dollar for dollar credit. The question of whether certain medical bills allegedly paid by Talbot's attorney because the employer and/or insurer did not

---

[5]     Mouton and Liberty Mutual assert in this appeal that the maximum amount of the "buy back" is limited by La.R.S. 23:1102(B) to fifty percent of Talbot's total compromise recovery which they maintain calculates to $53,699.37 based on the total (gross) settlement figure of $107,398.73. Were we to consider this argument we have explained in addressing Talbot's argument why this argument too, fails. Mouton and Liberty Mutual further maintain that the fifty percent limitation on the "buy back" provision "applies to the total amount recovered in the tort settlement" *before* deducting attorney fees and costs. We have also explained above why this is not the correct method of calculation. They further assert that when calculating the amount of the "buy back" a plaintiff's attorney's fees are limited to one-third of the settlement based on the criteria enunciated in *Moody v. Arabie*, 498 So.2d 1081 (La. 1986). This too, is not a correct statement of the law or jurisprudence as we have already discussed.

pay, or were not asked to pay, or perhaps were not required to pay, presents genuine issues of material fact precluding summary judgment on the issue of the amount of the dollar for dollar credit due Mouton/Liberty Mutual. The issue of whether these medical bills were incurred as a result of Talbot's compensable injury is also unresolved. The case must therefore be remanded to the workers' compensation court for further proceedings consistent with this ruling.

## DECREE

We affirm the trial court's ruling granting Talbot's motion for summary judgment in so far as it ruled that he has fulfilled his option to buy back his right to receive future workers' compensation benefits after reaching the appropriate dollar for dollar credit due Mouton/Liberty Mutual yet to be determined. We also affirm the trial court's ruling setting forth Talbot's entitlement to a credit for overpayment of the buy-back amount, plus accrued interest, and such overpayment is either to be reimbursed to Talbot or applied against the credit in favor of Mouton and Liberty Mutual, at Talbot's option and we hereby amend the judgment to fix the correct amount of the overpayment at $2,421.71. We amend the trial court's judgment fixing the amount of Talbot's buy-back to the corrected amount of $26,309.13. We affirm the trial court's ruling that Talbot's buy-back payment would not exceed the fifty percent statutory ceiling.

We reverse the trial court's ruling granting Mouton/Liberty Mutual's motion for summary judgment awarding a dollar for dollar credit in the amount of $28,730.83. The case is hereby remanded to the workers' compensation court for further proceedings on the determination of the amount of the dollar for dollar

11

credit due Mouton/Liberty Mutual consistent with this ruling.  Costs of this appeal are assessed against Mouton and Liberty Mutual.

**AFFIRMED IN PART, AMENDED IN PART, REVERSED IN PART, REMANDED. WRIT DENIED.**