JAMES F. McKAY III, Judge.
 

 | |The appellant, John Versluis, appeals the judgment of the district court granting the defendants’, International Fumigators, Inc. (“IFI”) and Gulf Coast Transit Company (“Gulf Coast”), motion in
 
 limine
 
 to exclude the proposed expert testimony of Dr. Barry Levy, and incorporated motion for summary judgment.
 

 FACTS
 

 John Versluis, asserts that he sustained injuries as a result of exposure to harmful levels of aluminum phosphine gas while he was employed by Gulf Coast as a crewman aboard’the M/V CYNTHIA FAGEN. The injuries were of such a permanent nature that he was unable to return to work as an able bodied seaman. Specifically, he worked aboard the MTV TECO TRADER, later known as the MTV CYNTHIA FA-GEN, from July 1, 1999 through December 2000. The MW CYNTHIA FAGEN is a large cargo ship that transports food commodities. As a general rule, because the food commodities in transit are vulnerable to pests and rodents, the cargo holds are fumigated prior to a vessel’s departure for its destination. Gulf Coast retained IFI to fumigate the MW CYNTHIA FA-GAN to protect its wheat cargo during voyage on July 21,1999, March 3, 2000 and | gOctober 25, 2000. The registered named pesticide used in the fumigation process was Fumitoxin® (aluminum phosphide). The record contains information that in the current Material Data Safety Sheet for the product, aluminum phosphide reacts with moisture from the air, acids and many other liquids to release hydrogen phos-phide (phosphine gas). This gas permeates the cargo hold thereby killing any pests or rodents that happen to be infesting the commodity.
 

 The appellant, John Versluis, alleges that he was exposed to Fumitoxin® over the course of four voyages from July 1, 1999 through December of 2000. He contends that during that time he came into contact with the phosphine gas as a result of being within the general vicinity of the
 
 *462
 
 fumigation process. He asserts that he could smell the fumigant in the holds. Additionally, at the end of each voyage, he was asked to enter the cargo holds to retrieve the empty sleeves that had previously held the fumigation pellets.
 

 He was subsequently assigned to the M/V SHARON DEHART beginning February of 2001.
 
 [1]
 
 During the course of his service on board that vessel, he began to complain of tightness in the chest and sternum. On March 1, 2001, he was transported to West Jefferson Medical Center in Harvey, Louisiana. On March 3, 2001, he was released from the medical facility and returned to his home in Panama City, Florida, where he became progressively more symptomatic for the alleged complained of injuries.
 

 PROCEDURAL HISTORY
 

 |sOn July 1, 2001, the appellant commenced his Seaman’s Act action against Gulf Coast and IFI. Pursuant to a February 3, 2004 trial order, Mr. Versluis filed a list of trial witnesses, which included Richard Lipsey, Ph.D., Dr. Bruce Yergin, a pulmonologist and Dr. Jacob Green, a neurologist. These witnesses generated reports and records to address the issue of whether the plaintiff sustained any injuries as a result of fumigant exposure. On September 24, 2004, Gulf Coast and IFI filed a motion
 
 in limine
 
 to exclude the proposed expert testimonies of Dr. Richard Lipsey and Dr. Jacob Green on the toxicological effects of phosphine gas on Mr. Versluis and incorporated motion for summary judgment. On March 21, 2005, the district court granted the motion, excluding the proposed testimony of Dr. Richard Lipsey. In the district court’s reasons for judgment it found:
 

 “Despite ample time to produce scientific articles supporting a theory that phosphine gas exposures causes long-term adverse health effects, plaintiff has been unable to do so. Dr. Lipsey is not qualified to offer a causation opinion. Moreover, his proposed testimony is not based on scientifically competent evidence, Dr. Lipsey’s opinions do not meet the standard of admissibility ...”
 

 Due to the intervening factors of Hurricane Katrina, on August 29, 2005, and the subsequent suspension dates established by the Louisiana Supreme Court, the September 26, 2003 cutoff date for appellant to produce additional expert reports was modified to January 13, 2006. On February 2, 2006, appellant identified Dr. Barry Levy, an internal and occupational medicine physician, as his proposed expert in the field of toxicology. The record indicated that Dr. Levy’s proposed testimony was primarily directed at establishing a causal relation between Mr. Versluis’ alleged memory problems and his exposure to phosphine gas.
 

 |4The trial court determined on March 13, 2008, that Dr. Levy’s testimony did not meet the requirement of
 
 Daubert v. Merrell Dow Pharmaceuticals, Inc.,
 
 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In the district court’s reasons for judgment it held that:
 

 Dr. Levy’s proposed testimony is to establish a causal link between Mr. Ver-sluis’ alleged memory problems and his exposure to phosphide gas. This Court is obligated to exclude Dr. Levy’s testimony under the requirement of
 
 Daubert.
 
 Dr. Levy’s theory is unsupported by peer reviewed scientific articles as required by
 
 Daubert.
 

 
 *463
 
 Additionally, the district court granted IFI’s motion for summary judgment dismissing it from this litigation.
 

 ISSUES ON APPEAL
 

 First, the appellant asserts that the district court erred in denying their motion
 
 in limine
 
 to qualify Dr. Barry Levy as an expert at trial. The defendant presents information that Dr. Levy is an occupational and environmental health physician and epidemiologist who specializes in the adverse health effects resulting from environmental and occupational exposure to chemicals, including pesticides. He also contends that Dr. Levy has testified in numerous cases regarding environmental and occupational exposures.
 

 The requirements of expert testimony are set forth in La. C.E. art. 702, which provides:
 

 If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.
 

 Isffce
 
 Mistich v. Volkswagon of Germany,
 
 95-0939, p. 8 (La.1/29/96), 666 So.2d 1073, 1079. “Formal education or training in a particular field is not always necessary to qualify as an expert in a particular field”; “[experience alone is sufficient”.
 
 Id.
 
 (citations omitted). It is well-established that the trial judge has wide discretion in determining whether to allow a witness to testify as an expert, and his judgment will not be disturbed by an appellate court unless clearly erroneous.
 
 Id.; Johnson v. Melton,
 
 03-1132, pp. 5-6 (La.App. 4 Cir. 2/4/04), 867 So.2d 804, 808.
 

 The district court, in its reasons for judgment, excluded Dr. Levy’s testimony
 
 citing Daubert v. Merrell Dow Pharmaceuticals, Inc.,
 
 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and the Louisiana case
 
 Cheairs v. State Department of Transportation and Development,
 
 2003-0680 (La.12/3/03), 861 So.2d 536. which governs the admissibility of expert testimony. Under the standards set forth in
 
 Daubert,
 
 and adopted by our Louisiana Supreme Court in
 
 State v. Foret,
 
 628 So.2d, 1116, 1122 (La.1993), the trial court is required to perform a “gatekeeping” function to “ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.”
 
 Daubert,
 
 509 U.S. at 589, 113 S.Ct. at 2795. In performing this function, a trial court must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.
 
 Kumho Tire Company, Ltd., v. Carmichael,
 
 526 U.S. 137, 152, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238 (1999). While
 
 Daubert
 
 specifically addressed scientific evidence,
 
 Kumho
 
 made clear that the trial court’s essential gatekeeping function applies to all expert testimony, including opinion evidence based solely on special training or | f,experience.
 
 Id.,
 
 526 U.S. at 148, 119 S.Ct. at 1174. Ultimately, “the trial judge must determine whether the testimony has ‘a reliable basis in knowledge and experience of [the relevant] discipline’ ”
 
 Id.
 
 526 U.S. at 153, 119 S.Ct. at 1175
 
 (quoting Daubert,
 
 509 U.S. at 592, 113 S.Ct at 2796). “[W]hether
 
 Daubert’s
 
 specific factors are, or are not reasonable measures of reliability ... is a matter that ... the trial judge [has] broad latitude to determine,” and a decision to admit or exclude is reviewed on an abuse of discretion standard.
 
 Id.
 
 526 U.S. at 153, 119 S.Ct. at 1176. Pursuant to
 
 Daubert,
 
 and
 
 State v. Quatrevingt,
 
 93-1644 (La.2/28/96), 670 So.2d 197, relevant factors determining whether scientific evidence is reliable include:
 

 
 *464
 
 (1) The “testability” of the scientific theory or technique;
 

 (2) Whether the theory or technique has been subjected to peer review and publication;
 

 (3) The known or potential rate of error; and
 

 (4) Whether the methodology is generally accepted in the scientific community.
 

 As the gatekeeper, the district court excluded the testimony and held that the appellant’s theory, based on Dr. Levy’s work, was not reliable, because it was not generally accepted in the scientific community, and not subject to peer review. What is clear from the record, is that Dr. Levy’s supporting evidence is simply a compilation of various documents, publications and studies that when gleaned
 
 en globo
 
 elude to a causal connection between Mr. Verluis’s medical complaints and the various warnings and possible side effects of undeterminable levels of exposure to phosphine gas. Although his opinion may have reached a plausible conclusion, it does not reach the level of expert testimony as envisioned by
 
 Daubert.
 
 The leap across the chasm from the data provided by Dr. Levy to his proffered opinion was [7found to be insufficient by the district court. However, this conclusion in no way prevents the appellant from presenting his original assertions at trial. The district court’s judgment merely precludes Dr. Levy from opining as an expert in the field of toxicology.
 

 The district court did not abuse its discretion in excluding the proposed testimony of Dr. Barry Levy.
 

 The appellant also asserts that the district court erred in granting International Fumigator’s motion for summary judgment. In a recent Louisiana Supreme Court case,
 
 Samaha v. Rau,
 
 2007-1726 (La.2/26/08), 977 So.2d 880, 882-883, the Court outlined the standard of review in a motion for summary judgment and noted that:
 

 A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant.
 
 Duncan v. U.S.A.A. Ins. Co.,
 
 2006-363 p. 3 (La.11/29/06), 950 So.2d 544, 546, see La. C.C.P. art. 966. A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law.
 
 Wright v. Louisiana Power & Light,
 
 2006-1181 p. 17 (La.3/9/07), 951 So.2d 1058, 1070;
 
 King v. Parish National Bank,
 
 2004-0337 p. 7 (La.10/19/04), 885 So.2d 540, 545;
 
 Jones v. Estate of Santiago,
 
 2003-1424 p. 5 (La.4/14/04), 870 So.2d 1002, 1006.
 

 The appellant argues that the district court disregarded Mr. Versluis’ short term damages when it dismissed IFI from the case
 
 sub judice.
 
 We review this matter
 
 de novo,
 
 and examine the record as a whole. As such, the record clearly establishes that Mr. Versluis has documented medical issues. The record also establishes that there
 
 may
 
 and we emphasize
 
 may
 
 be some causal links between |sMr. Versluis’ medical complaints and his exposure to phosphine gas. All of the literature in the record and presented to the district court acknowledges, at some level, that short term exposure to phosphine gas can/may lead to dizziness, weakness, nausea and chest pains. Mr. Versluis has documented complaints of physical problems, which are consistent with the published literature concerning phosphine gas exposure. His medical records also indi
 
 *465
 
 cate that he had never experienced any of these types of complaints prior to working for Gulf Coast. What is not clearly determinable from the record are the causative factors, the duration of exposure, and long term effects of exposure to phosphine gas. We consider these to be genuine issues of material fact germane to this ease. Therefore, summary judgment was not appropriate in this case.
 

 Accordingly, for the above and foregoing reasons, we affirm the district court’s judgment excluding the proposed expert testimony of Dr. Barry Levy, reverse the district court’s judgment granting IFI’s motion for summary judgment and remand the matter to the trial court for further proceedings consistent with this opinion.
 

 AFFIRMED IN PART; REVERSED IN PART.
 

 [1]
 

 . The MW SHARON DEHART was a tugboat and did not transport cargo. No fumigation operations took place aboard this vessel.