JOY COSSICH LOBRANO, Judge;
_JjThis is a workers’ compensation case, in:which the plaintiff/appellant, Jeneta Baker (“Baker” or the “claimant”), appeals the September 16, 2014 judgment of the Office of Workérs’ Compensation (“OWC”), which denied Baker’s claims for permanent total disability benefits and supplemental earnings benefits. The defendant/appellee, Jazz Casino Company, LLC a/k/a Harrah’s New Orleans Casino (“Harrah’s” or the “employer”), filed an answer to the appeal, contending that the OWC erred in denying the, employer’s fraud defense pursuant to La. R.S. 23:1208.
On July 20,-2006, Baker sustained an accident while in the course and scope of her employment as a waitress with Har-rah’s, when she injured' her back while carrying a heavy tray. Due to her injuries, Baker was unable return, to work as a waitress, and Harrah’s accommodated Baker by having her work various modified duty jobs for Harrah’s during the next several months. On June 25 and 27, 2007, Baker underwent a functional capacity evaluation, after which her then treating | ^orthopedist, Dr. Lance Estrada, and pain management physician, Dr. Patrick Waring, opined that Baker was capable of sedentary duty work.
On December 14, 2007, while working as a cashier at Harrah’s, Baker again injured her back by bending over. Thereafter, Baker began orthopedic treatment with Dr. Warren Bourgeois, who released Baker to return to work on a part time basis.
. On September 11, 2009, Dr. Bourgeois recommended surgical decompression at the L5-S1 level. On December 16, 2009, Baker attended a second medical opinion (“SMO”) appointment with the employer’s choice of choice of orthopedic surgeon, Dr. Gordon Nutik, who opined that Baker would be permanently restricted to sedentary duty work but disagreed with the recommendation for surgery. On June 16, 2010, Baker underwent a court-ordered independent medical examination (“IME”) with Dr. Ralph Katz, who recommended a selective nerve block at the SI level and opined that surgery would be appropriate if the nerve block was successful. However, the nerve block did not provide the claimant any relief.
Dr. Bourgeois continued to see Baker every three months to refill pain. medication and confirm her medical condition. Dr, Bourgeois placed Baker completely off work on July 9, 2,010. On October 19, 2010, Dr. Bourgeois opined that Baker was at maximum medical improvement without surgery and that she was permanently and totally disabled. On February 14, 2011, Dr. Katz opinéd that the claimant was capable of sedentary work.
| ¡¡Ultimately, Baker did not undergo surgery.[1] The issue of Baker’s entitlement to have the surgery approved and paid for by Harrah’s was not litigated at trial.
In January 2012, Harrah’s retained the services of Rusty Pleune (“Pleune”), a vo- *385 eatioñal rehabilitation counselor. Following an initial meeting with Baker, Pleune identified jobs he believed suitable for Baker, which he forwarded to Drs. Bourgeois and Nutik for review and consideration. • Dr. Nutik responded that he wished to re-evaluate Baker before commenting on Baker’s ability to perform the jobs. On July 19, 2012, Baker underwent a second SMO evaluation by Dr. Nutik, who opined that surgery may be appropriate, though he expressed concerns that neurological examination was normal and clinical findings were inconsistent. Nevertheless, Dr. Nutik opined that the claimant could return to work in a “very sedentary!’ job where she would have the opportunity to change positions frequently from sitting to standing. Thereafter, Dr. Nutik approved two positions as a parking lot attendant cashier. However, when Pleune contacted these employers for the two approved jobs, the positions were no longer available.
Pleune then located two similar cashier positions on September 13, 2012, with prospective employers Ace Parking and Standard Parking, which he sent to Baker through her attorney on the same date via certified mail. Dr. Nutik approved both positions on September 25, 2012. On October 2,2012, Pleune, confirmed that one of the cashier jobs with Standard Parking was still available, and Pleune I ¿forwarded the position to Baker on October 2, 2012 via certified mail. According to Pleune, the salary of cashier positions varied. He opined that a cashier’s hourly , wage base rate in New Orleans should be estimated at $8.05 per hour based on data from the Bureau of-Labor Statistics, and as an experienced cashier, Baker would earn in excess of the median wage rate. However, Baker did not return to work in any capacity.
On October 9,2012, Harrah’s terminated Baker’s indemnity benefits. The parties stipulated that from the time of the 2006 accident until to October 9, 2012, Baker was paid all indemnity benefits to which she was entitled, and that Baker’s average weekly wage was $352.75.
In response to the termination of indemnity benefits, Baker filed a disputed claim for compensation, Form LDOL-WC-1008 (the “disputed claim” or “1008”), alleging that she was permanently and totally disabled as a result of her workplace 'injury, and that she was entitled to penalties, attorney’s fees, interest, and costs for Har-rah’s discontinuance of indemnity benefits.
, Prior to trial, Baker was seen on March 19, 2014, for a follow up OWCordered IME by Dr. Katz, who reiterated his prior opinion that Baker had reached maximum medical improvement and was capable of returning to sedentary work.
This matter was set for trial on the merits on August 12, 2014. Following post-trial briefing, the OWC rendered judgment on September 16, 2014, holding, in pertinent part, as follows:
I,IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that
1. Claimant’s claim for Permanent and Total Disability benefits be and is hereby DENIED. The Court FINDS that Claimant did not prove by clear and convincing evidence her inability to engage in any type of employment, [ ] as required by La. R.S. 23:1221(2).
2. Further, Claimant’s claim for Supplemental Earnings Benefits under La. R.S. 23:1221(3)(a) be and is hereby DENIED. The Court FINDS that Claimant failed to establish by a preponder-anee of the evidence that she was and is unable to work and earn 90% of her pre-accident wages. ■ The Court found credible the opinions of Dr. Ralph Katz, the *386 IME orthopedic specialist, and Dr. Gordon Nutik, the Employer’s Second-Medical Opinion ■ orthopedist, that Claimant was and is capable of sedentary work. This finding.is buttressed by the Court’s evaluation of the Claimant’s behavior and actions in both the courtroom and on the surveillance digital videos, as well as the fact that Claimant does not take pain medication during the daytime. The Court HOLDS that Employer established by a preponderance of the evidence that Claimant is physically able to perform a job .available to her in her geographic region that paid in excess of 90% of her Average Weekly Wage, based on the testimony of the vocational rehabilitation counselor, Mr. Rusty Pleune, whose testimony the Court found credible.
3. The Court further HOLDS that the report of Claimant’s vocational specialist, Bobby Roberts, should not be given any significant weight, due to his failure to appear live and be cross-examined by Employer about his opinions and qualifications.
4. The Court further FINDS that Mr. Roberts’ report failed to establish that he had the necessary qualifications for him to testify as an expert under the criteria set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its progeny, as adopted in Louisiana.
5. Finally, the Court DENIES Employer’s .fraud defense under La. R.S. 23:1208, and HOLDS, that Claimant has not forfeited her entitlement to future ■workers’ compensation benefits.
-• Baker appeals the judgment of the OWC and argues that the workers’ compensation judge (“WCJ”) erred as follows-:- (1) in striking Roberts’ vocational report based on Dmbert; (2) in not striking Pleune’s testimony; (3) in determining that Baker was not entitled to permanent and total disability benefits; (4) | ¡^alternatively, in determining that Baker was not entitled to any indemnity benefits including temporary total disability benefits or supplemental earnings benefits; and (5) in determining that the claimant was not entitled to costs, interest, penalties, and attorney’s fees.
In its answer to' the appeal, Harrah’s argues that the OWC erred in failing to grant the employer’s fraud defense based on untruthful statements to Roberts and Dr. Bourgeois regarding her health, injuries, and abilities.
In workers’ compensation cases, the appropriate standard of review to be applied by- the appellate court to the OWC’s findings of fact -is the manifest error-clearly wrong standard. Dean v. Southmark Constr., 2003-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Roberts v. State/Office of Family Support, 2011-1614, p. 7 (La.App. 4 Cir. 7/5/12), 97 So.3d 570, 574. If the factfinder’s findings are reasonable in light of the record reviewed in its entirety,' the court of appeal may not reverse, even if convinced that' had it been sitting as the trier of fact, it would have weighed the evidence differently. Id., 2011-1614 at p. 7, 97 So.3d at 574-75; Chaisson v. Cajun Bag & Supply Co., 97-1225, p. 9 (La.3/4/98), 708 So.2d 375, 381.
When legal' error interdicts the fact-finding- process in a workers’ compensation proceeding, the de novo, rather than the manifest error,' standard of preview applies. MacFarlane v. Schneider Nat’l *387 Bulk Carriers, Inc., 2007-1386, p. 3 (La.App. 4 Cir. 4/30/08), 984 So.2d 185, 188.
When dealing with pretrial discovery matters, the standard of appellate review is whether the trial court abused its discretion. Indus. Pipe, Inc. v. Plaquemines Par. Council, 2012-1348, pp. 7-8 (La.App. 4 Cir. 9/14/12), 100 So.3d 896, 900.
“The decision to admit evidence into the record rests within- the sound discretion of the workers’ compensation judge and will not be reversed in the absence of manifest error.” Reinhardt v. City of New Orleans (NOPD), 2009-1116, p. 16 (La.App. 4 Cir. 1/13/10), 30 So.3d 229, 239-40 (citations omitted). Likewise, the trial judge has wide discretion in determining whether to allow a witness to testify as ,an expert, and his judgment will not be disturbed by an appellate court unless clearly erroneous. Versluis v. Gulf Coast Transit Co., 2008-0729, p. 5 (La.App. 4 Cir. 7/29/09), 17 So.3d 459, 463.
We first address the evidentiary and discovery matters.
Baker contends that the WCJ abused his discretion by striking Roberts’ vocational report based on Daubert. According to Baker’s argument, “it is not fair for the court to essentially convince counsel ... that he need not call his expert live when the said expert was available to testify and would allow his expert’s report in to be given appropriate weight.” Harrah’s argues that the OWC correctly found Roberts was not qualified as an expert because Roberts’ curriculum vitae does not reflect that he holds any license as a vocational rehabilitation counselor in ^Louisiana, and because Harrah’s was not afforded the opportunity to cross-examine Roberts about his qualifications or testing methods when Roberts did not testify. According to Harrah’s, Baker was not misled by the court’s, decision to admit Roberts’ report and give it “what weight it deserves,” and that Baker made a “calculated decision” to introduce the report into evidence while avoiding-the potential pitfalls of cross examination.
This Court explained the lower court’s “gatekeeping” function regarding expert opinion evidence in Versluis v. Gulf Coast Transit Co.:
[UJnder the standards, set forth in, Daubert, and adopted by our Louisiana Supreme Court in State v. Foret, 628 So.2d, 1116, 1122 (La.1993), the trial court is required to perform a “gatek-eeping” function to “ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.” Daubert, 509 U.S. at 589, 113 S.Ct. at 2795. In performing this function, a trial court must have considerable leeway in deciding in a particular case how to go about determining whether partic-ular expert testimony is reliable. Kumho Tire Company, Ltd., v. Carmichael, 526 U.S. 137, 152, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238 (1999). While Daubert specifically addressed scientific evidence, iKumho made clear that the trial court’s essential gatekeeping function applies to all expert .testimony, including opinion evidence based solely on special training or experience. Id., 526 U.S. at 148, 119 S.Ct. at 1174. ' Ultimately, “the trial judge must determine whether the testimony has ‘a reliable basis in knowledge and experience of [the relevant] discipline.’ ” Id., 526 U.S. at 153, 119 S.Ct. at 1175 (quoting Daubert, 509 U.S. at 592, 113 S.Ct. at 2796). “[W]hether ’ Daubert’s specific factors are, or are not reasonable measures of reliability ... is a matter that ... the trial- judge [has] broad latitude to determine,” and a decision to admit or exclude is reviewed on *388 an abuse of discretion standard. Id:, 526 U.S. at 153, 119 S.Ct, at 1176.
2008-0729 at pp. 5-6, 17 So.3d at 463.
Daubert concerns the admissibility pf an expert's opinion, but not his or her qualifications as an expert in the area tendered. Comeaux v. C.F. Bean Corp., 990924, p. 6 n. 3. (La.App. 4 Cir. 12/15/99), 750 So.2d 291, 296.
|nThe determination of whether to qualify a witness as an expert after evaluating his knowledge, skill, experience, training, or education[2] is within the sound discretion of the trial judge. Id., 99-0924 at p. 6, 750 So.2d at 297, citing Clement v. Griffin, 91-1664, p. 10 (La.App. 4 Cir. 3/3/94), 634 So.2d 412,- 424. Trial judges are afforded great latitude in deciding whether the witness has qualifications to testify as an expert on a particular subject. Comeaux, 99-0924 at p. 6, 750 So.2d at 297. Although such discretion is not absolute, the decision to accept a witness as an expert as qualified to render an opinion on a- particular matter may not be reversed in the absence of manifest error. Id.
This Court has found no manifest error in excluding the testimony of a vocational rehabilitation counselor who lacked a Louisiana license. James v. State Through Dep’t of Health & Human Res., Office of Mental Health & Substances Abuse, New Orleans Adolescent Children’s Hosp., 572 So.2d 701, 703 (La.App, 4 Cir.1990) (“A trier of fact may. reject the opinion of a medical expert depending upon the impression that the expert’s qualifications, credibility, and testimony make.”).
11flGenerally, a report prepared by an expert is not admissible because it is hearsay. See La. C.E. art. 801(c). The Louisiana Supreme Court has held that the OWC has discretion to admit hearsay evidence[3] and that ,the inability to cross-examine the i declarant affects the weight that the evidence carries. Chaisson, 97-1225 at pp. 11-12, 708 So.2d at 382.
Here, Roberts’ report was not stricken from evidence, as Baker'argues. On the contrary, according to the trial transcript, Roberts’ report and curriculum vitae were admitted into evidence over Harrah’s objection. Even though the OWC deemed these documents admissible; -the OWC did not afford Roberts’ report any - significant weight because Roberts did not appear at trial and submit to cross examination, and the OWC declined to accept Roberts as an expert on the basis of his report. " .
*389 No party subpoenaed Roberts to testify at trial. Roberts did not appear in court. At the start of trial, counsel for Baker stated on the record that he had not planned to call Roberts, as a live witness, as he intended only to introduce Roberts’ vocational file as a trial exhibit. At the conclusion of Baker’s presentation of evidence at trial, Baker’s attorney indicated to. the OWC that Roberts would be Inavailable to testify at 2:30 p.m., but the WCJ commented that he did not expect trial to last until 2:30 p.m. Neither party requested to continue trial or hold the record open to take Roberts’, testimony.'
Considering the foregoing, .we cannot conclude that the OWC abused its discretion in admitting Roberts’ vocational file into evidence while declining to qualify Roberts as a vocational rehabilitation expert. Assuming arguendo that the OWC erred in citing to Daubert as its basis for disqualifying Roberts as an expert—as opposed to excluding such evidence as part of the lower court’s gatekeeping function pursuant to Daubert—this was harmless error at most, as the OWC acted within its broad- discretion to determine that Roberts’ vocational file did not set forth the necessary qualifications for Roberts to testify as an expert. As such, this assignment of error is without merit.
Baker next argues that the OWC abused its discretion in not striking Pleune’s testimony; Baker’s argument is two-fold: (1) that the OWC erred by denying her motion to compel Pleune’s complete vocational counseling file, and (2) that the OWC erred by allowing Pleune to testify despite a conflict- of interest and appearance of sham rehabilitation.
First, Baker seeks reversal of the OWC’s denial of her motion to compel-Pleune’s complete vocational counseling file.
In particular, Baker seeks a document identified in Harrah’s privilege log, which was redacted from the copy of Pleun'e’s file produced to Baker in response 1 mto subpoena.[4] According to Harrah’s, the disputed document is a letter, which was sent by counsel for Harrah’s to Pleune in preparation for trial after Pleune’s file was closed after completion of vocational services. This document was not introduced into" evidence and is not a part of the record on appeal.
With respect to pretrial discovery, a trial judge has vast discretion in determining whether a refusal to produce documents was substantially justified. Bryant v. Justiss Oil Co., 2001-832, p. 3 (La.App. 3 Cir. 12/12/01), 801 So.2d 659, 662, citing Duplechien v. McNabb, 260 So.2d 789, 792 (La.App. 4 Cir.1972).
Generally, the articles governing discovery in Louisiana’s Code of Civil Procedure evidence an intent to allow broad discovery of information possessed by adverse parties.' The scope of discovery is defined by La. C.C.P. art. 1422 as follows:
Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved , in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature,- custody, condition, and location of any books, documents, or other tangible things .and- the..identity *390 and location of persons having knowledge of any discoverable matter. ' It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
haDe'spite that broad general provision, some things are excepted from discovery. La. C.C.P. art. 1424, which establishes the “attorney work-product rule,” provides, in relevant part:
The court shall not order the production or inspection of any writing, or electronically stored information, obtained or prepared by the adverse party, his attorney, surety, indemnitor, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. Except as otherwise provided in Article 1425(E)(1), the court shall not order the production or inspection of any part of the writing, or electronically stored information, that reflects the mental impressions, conclusions, opinions, or theories of an attorney.
La. C.C.P. art. 1424(A).
Pursuant to article 1424, prior to allowing discovery, the lower court was required to determine whether the information contained in the redacted portion of Pleune’s file was “obtained or prepared ‘by the adverse party, his attorney, ... [or] expert, ... in anticipation of litigation or in preparation for trial,” and if so, whether the denial of production would unfairly prejudice Baker. The party seeking to avoid discovery of documents on the grounds that they were prepared or obtained in anticipation of litigation or in preparation for trial bears the burden of proving that the exception applies. Johnson v. Mike Anderson’s Seafood, Inc., 2013-0379, pp. 6-7 (La.App. 4 Cir. 6/11/14), 144 So.3d 125, 131, citing Simmons v. Transit Management of Southeast Louisiana, Inc., 2000-2530, p. 3 (La.App. 4 Cir. 2/7/01), 780 So.2d 1074, 1077. The trial court has the discretion to order the production of a writing prepared in anticipation of trial if it is convincéd that the denial of production ’“will unfairly prejudice the party seeking the production or [^inspection in preparing his claim or defense or will cause him undue hardship or injustice.” See id. See also Hodges v. Southern Farm Bureau Cas. Ins. Co., 433 So.2d 125, 131 (La.1983).
Baker argues that the withheld document is not privileged, because Pleune testified that Baker, and not Harrah’s or its attorneys, was Pleune’s client. In her motion to compel, Baker asserted that production, of the disputed document would allow her .to assess whether Pleune’s vocational rehabilitation counseling services had been “appropriate” and whether there is good cause for a change in vocational counselor.
Harrah’s contends that the letter is subject to the attorney work-product rule and is irrelevant to any dispute in this case, as the letter was sent after all vocational services were complete and Pleune’s file was closed. According to Harrah’s, Baker has not shown how she was prejudiced by the OWC’s denial of her motion to compel.
The record before us reflects that a pretrial hearing took place on July 24, 2014. Harrah’s represented to the OWC that the only document withheld from Pleune’s file was a single letter drafted by Harrah’s counsel and sent to Pleune, who was retained by Harrah’s as a vocational *391 rehabilitation consultant.[5] Harrah’s maintained that the letter was sent after vocational services to Baker had been completed and once Harrah’s was preparing for trial. Harrah’s ultimately tendered 1 tjjPleune as an expert witness at trial, Harrah’s offered to produce the letter to the OWC for in camera inspection. The WCJ declined to inspect the document in camera.
The record reveals no facts supporting the application of any attorney-client privilege between Harrah’s and Pleune. While the withheld document is not a part of the record, Baker does not dispute that the document is a writing by the attorney for the adverse party in preparation for trial. Accordingly, Baker may only be entitled to production of Harrah’s attorney’s letter to Pleune if denial of production will unfairly prejudice Baker in preparing her claim or defense or will cause her undue hardship or injustice. See La. C.C.P. art. 1424. There is no dispute that the letter was prepared only after the completion of all vocational services' to Baker, while the remainder of Pleune’s file, documenting vocational services at the time of those services, was produced to Baker. Baker merely argued that, without the letter, she could not determine whether the work performed by Pleune was appropriate or whether there wás good cause for á change in counselor. However, Baker fails to explain why she cannot develop such a claim through the remainder of Pleune’s file, which was produced to Baker. We find no showing of unfair prejudice, undue hardship or injustice to Baker, and accordingly, we find no abuse of discretion by the OWC in denying production of the letter to Baker. Moreovér, Baker cites to no case, and we find none, supporting striking this expert witness on the basis of this discovery dispute. ,
I ^Second, Baker claims on appeal that Pleüne’s testimony should be stricken because Pleune demonstrated a “clear conflict of interest” and engaged in “sham rehabilitation.” The record reveals that Baker did not file any motion to strike or exclude Pleune’s testimony. While cross-examining' Pleune on his qualifications as an expert, Baker’s attorney indicated that Baker intended to object to Pleune’s testimony by building a record of prejudice insofar as Pleune had communicated with Harrah’s adjuster and attorneys outside of Baker’s presence. ' At trial, Baker sought to exclude Pleune’s testimony only on the basis of these communications. No other disputes involving conflict of interest, sham rehabilitation, or quality of vocational services were litigated at trial or in any pretrial hearing.[6] There was no objection to Pleune’S qualifications as an expert.
“It is well established as a general matter, appellate courts will not consider issues raised for the first time, which were not pleaded in the trial court below and which the trial court has not addressed.” Lowe, Stein, Hoffman, Allweiss & Hauver, L.L.P. v. Cheramie, 2010-0588, p. 3 (La.App. 4 Cir. 9/29/10), 49 So.3d 457, 459, citing Billieson v. City of New Orleans, 2009-0410, p. 8 (La.App. 4 Cir. 11/12/09), 26 So.3d 796, 801-802. We therefore limit our review to whether the OWC erred by not striking Pleune’s testimony on the basis of Pleune’s communication with the em *392 ployer’s representatives outside of Baker’s presence. .
117The propriety of meetings and conversations between the vocational counselor and representatives of the employer, without the employee or his representative present, has long been the subject of litigation in Louisiana courts. Many employees and their attorneys have sought to temper this concern through the imposition of so-called Crain Brothers conditions on. the vocational counselor, demanding .the counselor’s agreement to various conditions in order for the employe^ to submit to vocational rehabilitation. See Crain Bros., Inc. v. Richard, 2002-1342, pp. 1-3 (La.App. 3 Cir. 4/9/03), 842 So.2d 523, 524-26 (upholding conditions placed by an employee’s attorney on a vocational rehabilitation counselor, including “[t]hat I will be a party to all oral conversations between you [the counselor] and the employer, insurer or their representative or attorney. (There will be no secret conversations between yourself and the employer or insurer or their representatives) ... ”).
This Court has found it unreasonable to require a vocational counselor to agree to include the employee and her attorney in all oral conversations with the employer.[7] Mendoza v. Leon’s Plumbing Co., 2004-0189, pp. 8-9 (La.App. 4 Cir. 12/22/04), 892 So.2d 600, 606.
11sThe Louisiana Supreme Court, .addressing the Crain Brothers conditions, held in Hargrave v. State, 2012-0341, p. 13 (La.10/16/12), 100 So.3d 786, 793:
Accordingly, we conclude the hearing officer manifestly erred in determining that the conditions set forth in the letter agreement were reasonable or necessary. La.Rev.Stat. 23:1226(B)(3)(a) sets forth a procedure by which an employee may file a claim with the Office .of Workers’ Compensation if a dispute arises regarding the quality of the services of the vocational counselor or the necessity for such services.. As the Interiano [v. Fernando Pastrana Const., 2004-430 (La.App. 5 Cir. 10/26/04), 887 So.2d 547] court reasoned, there is no requirement in La.Rev.Stat. 23:1226 that a vocational rehabilitation counselor must agree to certain conditions prior to providing vocational rehabilitation services. Certainly absent any showing by the claimant that there is- an actual dispute as to the provision of services or the quality thereof, requiring the counselor to abide by such conditions, even if intended as a prophylactic measure, necessarily resorts to speculation and conjecture as to the future actions of the counselor, Accordingly, the OWC hearing officer and the court of appeal erred in requiring the vocational rehabilitation counselor to agree to certain conditions prior to the performance of rehabilitation services in the absence of an evidentiary showing that there was an actual dispute as .to the quality pf the services of the vocational, rehabilitation counselor or the ne; cessity for such services.
Pleune was called by Harrah’s to testify at trial as the employer’s witness. Pleune testified that he met .with Harrah’s attor *393 ney prior to trial to discuss Pleune’s vocational rehabilitation “work on the file” after all of Pleune’s work relative to Baker’s case had been completed and after Pleune’s file was closed. Baker was not present at this meeting between Pleune and Harrah’s attorney. Pleune did'not recall meeting with anyone else in preparing for his' testimony at trial. Harrah’s adjuster, Nicole Traina, testified 'that she had spoken with Pleune on many occasions but she did not recall whether those conversations were related to Baker or to other injured workers for whom Pleune provided vocational counseling. No evidence was introduced at trial that any méetings between Pleune and representatives of 11flHarrah’s took place outside of Baker’s presence while vocational services were ongoing.
To the extent that any dispute may have arisen concerning the work of the vocational counselor, Baker had the right to file a claim with the OWC to review the need for vocational services or the quality of'services being provided pursuant to La. R.S. 23:1226(B)(3)(a), However, the record does not reflect that any dispute regarding the quality of Pleune’s vocational services was raised or litigated .at trial or in a pretrial proceeding. On , the facts, before us, we do not find that the OWC erred, by not striking Pleune’s testimony.
, We now turn to the merits of thé underlying claim for workers’ compensation benefits and associated claims for penalties, attorney’s fees, costs, and interest.
Baker claims that the OWC erred as a matter of law in determining that Baker was not entitled to permanent and total disability or “PTD” benefits. An employee’s entitlement to PTD benefits is governed by La. R.S. 23:1221(2)(c), which provides:
For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subpar-agraph (2)(b) of this Paragraph; compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is’physically'unable to engage in any employment or self-employment,' regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employmént, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
12nHowever, “a disability due to chronic pain does not meet the requirements of ‘physical’ disability under La. R.S. 23:1221(2)(c).” Hand v. City of New Orleans, 2004-0845, p. 7 (La.App. 4 Cir. 12/22/04), 892 So.2d 609, 613. " ■
This .Court explained the employee’s burden of clear and convincing evidence in Duplessis v. Tulane Univ. Med. Ctr., 2010-0267, p. 3 (La.App. 4 Cir. 8/25/10), 47 So.3d 992, 995 as follows:
Pursuant’ to La. R.S. 23:l221(2)(c), even if an employee seeking PTD is in pain, he must work unless he proves by clear and convincing evidence that he is physically unable to engage in any type of employment whatsoever, including self-employment, Daniel v. New Orleans Public Service Inc., 02-2427 (La.App. 4 Cir. 12/3/03), 861 So.2d 721. The clear and convincing standard is a heavier burden of proof than the usual civil preponderance of the evidence standard but less burdensome than the beyond a reasonable doubt standard used in criminal law. Daniel, 02-2427 at p. 6, 861 So.2d at 725-26.
*394 To carry the burden of proving disability by clear and convincing evidence, a workers’ compensation claimant must present objective medical evidence. Molinere v. Vinson Guard Service, Inc., 05-0116 (La.App. 4 Cir. 7/13/05), 914 So.2d 566. Stated otherwise, to. satisfy the elevated burden of proving by clear and convincing evidence, the jurisprudence has recognized that a claimant must introduce medical evidence of a disability. See Jackson v. Domtar Industries, Inc., 98-1335, pp. 6-7 (La.App. 3 Cir. 4/7/99), 732 So.2d 733, 738; Scherer v. Interior Plant Design, 98-702 (La.App. 3 Cir. 10/28/98), 724 So.2d 797. In the absence of such evidence, a claimant’s demand for PTD fails. Williams v. Children’s Hosp., 07-464 (La.App. 4 Cir. 1/23/08), 996 So.2d 291.
, Baker contends that an employee capable of sedentary work should still be classified as permanently.and totally disabled if any or all of the following factors are present: the lack of necessary medical treatment to enable the claimant to return to work; the claimant’s treating physician deems the employee unable to work; the employee is limited by age and work experience; and the claimant has not been the subject of meaningful rehabilitation or retraining. According to .Baker’s argument, l^all of these facts were established at trial, and the OWC erred as a matter of law in failing to award PTD benefits. We do not agree that the standard fashioned by Baker above supplants the requirements set forth in La. R.S. 23:1221(2) that Baker must meet in order to establish her entitlement to PTD benefits. We recognize also that’ the" Supreme Court and this Circuit have rejected a “totality of the circumstances” test in assessing permanent total disability. Phillips v. City of New Orleans (NOPD), 2012-1684, p. 12 (La.App. 4 Cir. 5/1/13), 116 So.3d 823, 828, citing Comeaux v. City of Crowley, 2001-0032, p. 11 (La.7/3/01), 793 So.2d 1215, 1221.
Finding no legal error by the OWC, we consider the OWC’s finding denying PTD benefits subject to a manifest error-clearly wrong standard of review. See Duplessis, 2010-0267 at p. 2, 47 So.3d at 994 (“the appropriate standard of review applied to the OWC’s factual findings is the manifest error-clearly wrong standard.”).
This Circuit follows the general júrisprudential rule that the testimony of a treating physician should be accorded greater weight than that of a physician who examines a patient only once or twice. Williams v. Wal-Mart Stores, Inc., 2000-0863, p. 6 (La.App, 4 Cir. 5/16/01), 787 So.2d 1134, 1137. However, it is also well-established that the treating physician’s testimony is not'irrebuttable, and the trier of fact is required to weigh the testimony of all medical witnesses. Id.
The WCJ is afforded considerable discretion in evaluating expert testimony, and the decision to-accept the testimony of one witness ’ ■ ■ over the conflicting | ¡^testimony of another can virtually never be manifestly erroneous. Irving v. Transit Mgmt. of Se. Louisiana, Inc., 2010-0360, p. 4 (La.App.4 Cir. 7/20/10), 44 So.3d 796, 799.
With respect to evaluating the opinions of a court-appointed IME, this Court has stated: ' .
La. R.S. 23:1123, which provides for the appointment of an IME'when there is a conflict in the medical evidence, ■provides that the report of the IME shall be prima facie evidence of the facts therein stated. The courts have interpreted La. R.S. 23:1123 to mean that an IME’s medical conclusions should be given significant weight because the IME is an objective witness. Frye v. *395 Olan Mills, 44,192 p. 6 (La.App, 2 Cir. 4/8/09), 7 So.3d 201, 205; Marks v. 84 Lumber Co., 2006-0358, p. 7 (La.App. 3 Cir. 9/27/06), 939 So.2d 723, 730. Nevertheless, the opinion of the IME is not conclusive, and the trial judge must evaluate all of the' evidence presented in making a decision as to the claimant’s condition. Richardson v. Lil' River Harvesting, 2009-1090, p. 2 (La.App. 3 Cir. 3/10/10), 33 So.3d 418, 419; Cortez v. East Jefferson General Hospital, 2008-0653, p. 10 (La.App. 5 Cir. 1/13/09), 7 So.3d 707, 713. The weight given to the testimony of an IME can be lesser or greater depending on the qualifications or expertise of the physician, the type of examination he performs, his opportunity to observe the patient, his review of other physicians’ examinations and tests, and any other 'relevant factors. Green v. Louisiana Coca Cola Bottling Co., Ltd,, 477 So.2d 904 (La.App. 4 Cir.1985).
Bell v. Mid City Printers, Inc,, 2010-0818, p. 11 (La.App. 4 Cir. 12/22/10), 54 So.3d 1226, 1234.
At trial, the parties introduced medical evidence from three different, orthopedic surgeons. Baker introduced the medical records and deposition of Dr. Bourgeois. It is clear from Dr. Bourgeois’ records and testimony that he was Baker’s treating physician since 2007, that he saw her approximately once every kqthree months, that he has recommended surgery since 2009, and that he has opined since 2010 that Baker is permanently, totally disabled, . ■ ■
Harrah’s introduced the records of its choice of physician, Dr. Nutik, who deemed Baker capable of sedentary work in 2009. At that time, Dr.- Nutik felt surgery was unnecessary. However, when Dr. Nutik re-evaluated Baker in 2012, he equivocated regarding the necessary of surgery, believing it may have- been appropriate at that point.. Nevertheless, Dr. Nutik still believed Baker capable of sedentary work and approved several sedentary positions which were identified by Pleune in the course of vocational rehabilitation.
Harrah’s also came forward with the records and deposition testimony of Dr. Katz who, in his capacity at a court-appointed IME, evaluated Baker both in 2010 and 2014. . Dr. Kate opined that, while there was a possibility that Baker could improve with surgery, he did not believe this was likely as Baker obtained no relief with selective nerve root blocks. However, the physician noted that Baker had elected not to have surgery. In both evaluations, Dr. Kate found Baker capable of returning to .sedentary work with the ability to sit and stand as needed.
Considering the above, we decline to disturb the factual finding made by the WCJ in giving greater weight to Dr. Kate’s independent conclusion and to the opinion of Dr. Nutik. The WCJ was not clearly wrong in denying PTD benefits. Accordingly, we find no merit in this assignment of error.
- In the alternative, Baker argues that the OWC erred as a-matter of law in denying claims for temporary total disability benefits and/or supplemental earnings | ^benefits-. Baker has not- identified any specific legal error by the OWC or explained how any legal error has disrupted the fact-finding process. As discussed herein, in the absence of .a legal error by the OWC which interdicted the fact-finding process, we consider the OWC’s finding denying benefits subject to a manifest error-clearly wrong standard of review. See Duplessis, 2010-0267 at p. 2, 47 So.3d at 994.
*396 First addressing temporary total disability, we note that the OWC trial judgment reflects no ruling specifically addressing Baker’s entitlement to temporary total disability or “TTD” benefits., An employee is entitled to receive TTD .benefits only if he proves by clear and convincing evidence, without any presumption of disability, that he is physically unable to engage in any employment or self-employment. Carambat v. City of New Orleans Police Dep’t, 2014-0810, p. 4 (La.App. 4 Cir. 2/4/15), 160 So.3d 1031, 1034, citing Hall v. MacPapers, Inc., 2011-1548, p. 6 (La.App. 4 Cir. 6/30/12), 95 So.3d 1131, 1135. An injured employee who is able to return to work, even if in pain, is no longer eligible for TTD benefits. Carambat, 2014-0810 at p. 4, 160 So.3d at 1034.
“An award of benefits based" on temporary total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made and the employee’s physical condition has improved to .the point that continued, regular treatment by a physician is not required.” La. R.S. 23:1221(l)(d). Thus, when a satisfactory degree of healing is reached and the claimant is no longer in a period of recovery his condition will be deemed Impermanent” and he will no longer be entitled to TTD benefits. Holmes v. Int’l Properties, 611 So.2d 7.73, 776 (La.App. 4 Cir.1992) (citations omitted).
It is apparent from the medical evidence that no physician characterized Baker’s condition as “temporary” at the time of trial. Instead, Drs. Bourgeois, Nutik, and Katz all found Baker to have attained maximum medical improvement, all agreeing on the permanency of her condition, though offering differing opinions on\ her ability to return to work. We do not find any error by the OWC in declining to award TTD benefits.
Next, we turn to the question of Baker’s entitlement to supplemental earnings benefits or “SEBs.” The purpose of SEBs is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident. Poissenot v. St. Bernard Parish Sheriff’s Office, 09-2793, p. 4 (La.1/9/11), 56 So.3d 170, 174. La. R.S. 23:1221(3)(a) provides that an . employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage.' Initially, the employee bears the burden of proving by a preponderance of the evidence that the injury resulted in his inability , to earn that, amount under the facts and circumstances of the individual case. Poissenot, 09-2793. at p. 5, 56 So.3d at 174. Once the employee’s burden is met, the burden shifts to the employer who, in order to defeat the employee’s claim for SEBs, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee | ⅞¾⅛ her or the employer’s community or reasonable geographic region. Id.; La. R.S. 23:1221(3)(c)(i).
In Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, pp, 10-11 (La.7/1/97), 696 So.2d 551, 557, the Louisiana Supreme Court, discussing the meaning of “job availability,” held that an employer may discharge its burden of proving “jpb availability” under La. R.S. 23:1221(3)(c)(i) by, establishing, at a minimum, by competent evidence: .
(1) the existence of a suitable job within claimant’s physical capabilities and within claimant’s, or the. employer’s,community or reasonable geographic region;
*397 (2) the amount of wages that an employee with claimant’s experience and training can be expected to earn in that job; and
(3) an actual position available for that particular job at the time that the claimant received notification of the job’s existence.
The Supreme Court defined a “suitable job” as “a job that claimant is not only physically capable of performing, but one that also falls within the limits of claimant’s age, experience, and education, unless, of course, the employer or potential-employer is willing to provide any additional necessary - training -or education.” Id. (Footnote omitted).
At trial, the OWC found that Baker did not meet her initial burden to show, by a preponderance of the evidence, her inability to earn at least 90% of her preinjury wages. The OWC also found that Har-rah’s established by a preponderance of the evidence that Baker is physically able to perform, a job available to her in her geographic region that paid in excess of 90% of her average weekly wage.
27The parties stipulated that Baker’s pre-injury average weekly wage was $352.75. Accordingly, in order to be entitled to SEBs, Baker had the initial burden to show that, due to injuries sustained in the accident, she was unable to earn 90% of her pre-injury wages, which equates to $317.48 per week, or $7.94 per hour for a 40-hour work week.
On appeal, Baker argues that she did not have the back surgery that was necessary for her to return to work. She also argues that, through Dr. Bourgeois’, medical records and Roberts’ expert report, she established a prima facie case of entitlement to SEBs, and that once the burden shifted to the employer, Harrah’s could not overcome that claim.
With respect to Baker’s initial burden to prove her inability to earn 90% of her pre-injury wages, she introduced the medical records and deposition of Dr. Bourgeois, who found Baker unable to: return to work in any capacity from July 2010 forward and opined as of October 2010 that Baker was permanently and totally disabled without undergoing back surgery. Baker testified- at trial that she declined to have surgery, and that she had neither worked nor applied for work since July 2010. She also introduced the vocational rehabilitation report of Roberts, who opined that Baker would pot be able to return to work. The OWC declined;to qualify Roberts-as an expert.
Harrah’s argues that Baker failed to put forth evidence in support of her initial burden to show by a preponderance of the evidence that her injury resulted in her inability to earn at least 90% of her pre-injury wages. ’ According to Harrah’s 128argument, mere refusal to return to work, or to look for work, is insufficient to prove entitlement to SEBs. Harrah’s contends that because Baker did not meet her initial burden of proof, the claim for SEBs was defeated at that point, and the burden did not shift back to Harrah’s to prove Baker’s ability to perform a certain job or availability of that job. See e.g. Rapp v. City of New Orleans, 95-1638 (La.App. 4 Cir. 9/18/96), 681 So.2d 433; Smith v. Hamp Enterprises, Inc., 95-2343 (La.App; 4 Cir: 4/17/96), 673 So.2d 267; Schmitt v. City of New Orleans, 632 So.2d 367, 374 (La.App. 4 Cir.1993); Duhon v. Holi Temp. Servs., Inc., 97-0604 (La.App. 4 Cir. 10/1/97), 700 So.2d 1152. Nevertheless, Harrah’s argues that it proved, through Pleune’s expert testimony, that Baker was physically able to perform a job available in her geographic region paying in excess of- 90% of her pre-injury average weekly wage, by identifying multiple jobs ap *398 proved by Dr. Nutik, which paid $8.00 or more per hour.
Harrah’s introduced the medical records of the employer’s choice of orthopedic surgeon, Dr. Nutik, who opined in December 2009 that Baker would be permanently restricted to sedentary work. Baker was working for Harrah’s as a cashier at the time of the 2009 examination and Dr. Nu-tik characterized the work as “sedentary duty.” In July 2012, Dr. Nutik performed a follow-up examination, and again gave the opinion that Baker was capable of sedentary work. Harrah’s also put forth the medical records and deposition of the court-appointed IME, Dr. Katz, who agreed based on his evaluations in June 2010 and March 2014 that Baker was capable of sedentary work. The employer also introduced surveillance |2aof Baker, which documented more than ten days of video and showed Baker catching beads at a Mardi Gras parade, walking at times without her cane, picking up and carrying a grandchild, driving or remaining seated in á car for more than one hour at a time, bending and twisting while seated in a car, running errands for more than six hours, and standing on the balls of her feet and reaching overhead to place decorations in a tree. Additionally, Harrah’s points to Baker’s trial testimony that she did not take pain medication during the day.
The OWC also noted in its findings that it observed Baker’s actions and behavior in court, in support of its finding that Baker failed to meet her burden of proving her entitlement to SEBs. As discussed in this opinion, the OWC found credible the opinions of Dr, Katz and Dr. Nutik that Baker was capable of sedentary work.
In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was' a reasonable one. Seal v. Gaylord Container Corp., 97-0688, p. 4 (La.12/2/97), 704 So.2d 1161, 1164. Where two permissible views of the evidence exist, a fact finder’s choice between them can never be manifestly erroneous or clearly wrong. Id. If the fact finder’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Banks, 96-2840 at p. 8, 696 So.2d at 556.
IsoConsidering the above, we cannot find that the OWC’s finding, that Baker failed to establish by a preponderance of the evidence that she was and is unable to work and earn 90% of her pre-accident wages, was manifestly erroneous or clearly wrong.
“Only after the claimant has discharged this initial burden does the burden shift to the employer to show that the claimant is able to perform a job available in his or his employer’s community or reasonable geographic region.” Duhon, 970604 at p. 4, 700 So.2d at 1154, citing Banks, 96-2840 at p. 9, 696 So.2d at 556. Accordingly, we do not find that it is necessary to reach the question of whether the employer proved Baker’s ability to .perform a job available in her geographic reason, earning 90% or more of pre-injury wages. Therefore, we find no manifest error in the OWC’s denial of SEBs.
Finally, Baker contends that the OWC manifestly erred in determining that Baker was not entitled to costs, interest, penalties, and attorney’s fees. The decision to impose penalties and fees is essentially a factual issue subject to the manifest error-clearly wrong standard of review. Authement v. Shappert Engineering, 2002-1631, p. 12 (La.2/25/03), 840 So.2d 1181, 1188-89. Award's of penalties *399 and attorneys’ fees in compensation cases are essentially penal, and are intended to deter indifference and undesirable conduct by employers and their insurers toward injured workers. Trahan v. Coca Cola Bottling Co., 2004-0100, p. 17 (La.3/2/05), 894 So.2d 1096, 1108. Although the benefits in workers’ compensation cases are to be liberally construed, penal statutes are to be strictly |R1 construed. Smith v. Quarles Drilling Co., 2004-0179, p. 7 (La.10/29/04), 885 So.2d 562, 566. Penalties should not be imposed in doubtful cases, where a bona fide dispute exists as to the' claimant’s entitlement to benefits. J.E. Merit Constructors Inc. v. Hickman, 2000-0943, p. 5 (La.1/17/01), 776 So.2d 435, 438.
Here, the lower court judge found that Baker failed to meet her burden of proof regarding her entitlement to benefits. No benefits were awarded and there was no finding that Baker was entitled to penalties, attorney’s fees, costs, or interest based on any sanctionable action or inaction by the employer. As established by the jurisprudence; the finding of the WJC in favor of the employer, as in the present case, is “virtually conclusive that its actions were reasonable and were not arbitrary and capricious.” Bell, 2010-0818 at p. 16, 54 So.3d at 1237, citing Royals v. Town of Richwood, 42,585, p. 12 (La.App. 2 Cir. 10/24/07), 968 So.2d 833, 840. See also J.E. Merit Constructors, Inc., 2000-0943 at p. 6, 776 So.2d at 438. Accordingly, we find no merit in this assignment of error.
Finally, in the answer to appeal, Harrah’s argues that the OWC erred in denying Harrah’s misrepresentation claim brought under La. R.S. 23:1208. Harrah’s contends that Baker lied to Roberts about applying to every job that Pleune had located for her and that Baker lied to Dr. Bourgeois about her physical inabilities which were contradicted by surveillance video. According to.Harrah’s argument, this is fraud for the purposes of obtaining workers’ compensation benefits.
|saLa. R.S. 23:1208 makes it unlawful for any claimant to willfully make false statements for the ■ purpose of obtaining workers’ compensation benefits. The only requirements for disqualification under Section 1208 are: 1) a false statement or representation, 2) which is willfully made, and 3) which is madé for the purpose of obtaining workers’ compensation benefits. Resweber v. Haroil Const. Co., 94-2708, 94-3138, p. 7 (La.9/5/95), 660 So.2d 7, 12.
As this Court explained in Bell v. Mid City Printers, Inc.:
The issue of whether an employee has forfeited his right to workers’ compensation benefits is a factual question that should not be disturbed on appeal absent manifest error. Stanich v. Canal Entertainment, 2009-0707, pp. 2-3 (La.App. 4 Cir. 11/12/09), 26 So.3d 269, 272. Statutory forfeiture is a harsh remedy and must be strictly construed. Herrera v. Cajun Co., 2006-1627, p. 7 (La.App. 4 Cir. 6/6/07), 960 So.2d 1161, 1166. Inadvertent or inconsequential' statements will not give rise to a finding of willful misstatement, triggering statutory penalties. Hernandez v. ESKCO, Inc., 2000-0174, p. 3 (La.App. 4 Cir. 11/15/00), 773 So.2d 865, 867.
2010-0818 at p. 17, 54 So.3d at 1237-38. .
Roberts did not testify at trial. In his vocational rehabilitation report, Roberts recounts that Baker “applied to all of the jobs reporting that the businesses to which she applied told her that they were not hiring.” At trial, Baker testified that she has not filled out a job application since she stopped working for Harrah’s in 2010, but that she made “made, phone calls” to businesses identified by Pleune and *400 learned that the positions were not available. There was no trial testimony regarding what Baker told Roberts about any post-accident job applications.
With respect to Baker’s statements to Dr. Bourgeois, the physician’s deposition was introduced into evidence, in which Dr. Bourgeois was questioned regarding Baker’s activities depicted in the surveillance video. Dr. Bourgeois [ ¡^testified that Baker can “do anything she wants. It depends on what she is willing to put up with pain-wise.” He opined that he would not .be surprised if Baker could walk without a cane, sit through a movie, jump up and down, or gamble in a casino. Dr. Bourgeois testified none of' these activities would change his opinion about Baker’s ability to work.
While Harrah’s provided speculation as to why Baker made erroneous statements, nothing was presented to show that Baker made any intentional or willful misrepresentation for the purpose of obtaining compensation benefits. It would not be unreasonable for the OWC to conclude that these accounts to Roberts and Dr. Bourgeois, while inaccurate, were inconsequential and insufficient to rise to the level of willful misstatements. We find no manifest error in the OWC’s conclusion that Harrah’s failed to carry its burden on this issue.
For all of these reasons, we affirm the judgment of the OWC, which denied Baker’s claims for PTD benefits and SEBs and which denied Harrah’s fraud claims brought under La. R.S. 23:1208.
AFFIRMED
LANDRIEU, J., concurs in the result.

. Baker argues that Harrah’s did not preauthorize payment for the surgery. Harrah’s argues that Báker did not request pre-authori-zation of the surgery and testified at trial that she had declined to undergo the surgery. Regardless, no dispute regarding this surgery is part of this appeal. - ’ '

. La.' C.E. art. 702, which governs testimony by expert witnesses, provides as follows: ■
A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(1)- The- expert’s scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(2) The testimony is based. on sufficient facts or data;
(3) The testimony is the product of reliable principles and methods; and
(4) The expert has reliably applied the principles- and methods to the facts of the case.

. The relaxed evidentiary standard for workers’ compensation proceedings is set forth in La. R.S. 23:1317(A), which provides, in pertinent part, as follows: ■ -
The workers' compensation judge shall not be bound by-technical'rules of evidence or procedure other than! as herein provided, but all findings of fact must ,be based upon competent evidence and all. compensation payments provided for in this Chapter shall méan and be defined to be for only such injuries as are proven by competent evidence, or for which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself. The workers' compensation judge’’ shall decide the merits of the controversy as equitably, summarily, and simply as may be-.

. Here, Baker revisits the subject of her previous application for supervisory writs to this Court prior to trial. See Baker v. Harrah’s, 2014-C-0827 (La.App. 4 Cir. 8/6/14, unpublished). However, this Court’s denial of Baker’s writ application is not law of the case and the parties may litigate the issue on appeal. Armstrong Airport Concessions v. K-Squared Rest., LLC, 2015-0375, p. 8 (La.App. 4 Cir. 10/28/15), 178 So.3d 1094, 1100.

. "The employer shall be responsible for the selection of a licensed professional vocational rehabilitation counselor to evaluate and assist the employee in his job placement or vocational training.” La. R.S. 23:1226(B)(3)(a).

. La. R.S. 23:1226(B)(3)(a) provides the employee with the right to file a claim with the OWC to review the need for vocational services or the quality of services being provided, as well as the right to an expedited hearing on such a claim.

. "Requirement "D” in the letter agreement provided that Mendoza's attorney be a part of all oral conversations between Ms. Reish [the vocational rehabilitation counselor] and Leon’s Plumbing, their insurer, representative or attorney, further requiring that no secret ' conversations take place. The WCJ opined that' requirement "D” was cumbersome on the vocational rehabilitation counselor because it required Mendoza’s attorney to participate in all oral conversations regarding the case. The WCJ further held that this requirement would be an unsupported expansion of the law because it is not mandated by legislation; therefore it is unreasonable ... We agree with the WCJ that the aforementioned requirements of the Mendoza’s letter agreement were unreasonable.”